# Richmond.

## GRUBB AND ALS. V. STARKEY AND ALS.

### DECEMBER 20th, 1894.

1. EQUITABLE JURISDICTION—*Specific performance—Damages.*—Equity may enforce specific performance of a contract to do on plaintiff's property definite work, wherein he had a material interest, and there cannot be adequate compensation in damages ; and may also, as ancillary, award damages for a breach of the contract.
2. IDEM—*Ouster.*—Where the court has once acquired jurisdiction upon equitable grounds, no subsequent act of the defendants can oust that jurisdiction.
3. IDEM—*Complete adjudication.*—When a court of equity has once acquired jurisdiction, it may go on to a complete adjudication, even to the extent of establishing legal rights and granting legal remedies, which would otherwise be beyond the scope of its authority.   *Walters* v. *Farmers Bank,* 76 Va., 12.
4. NON-RESIDENTS—*Judgments in personam.*—Where non-resident defendants who have been proceeded against by publication under attachment, appear and defend on the merits, judgments and decrees *in personam* may be entered against them.

Appeal from decree of circuit court of Botetourt county. Opinion states the case.

*Benj. Haden* and *J. H. Lewis*, for appellants.

*J. H. H. Figgatt* and *C. M. Lunsford*, for appellees.

LEWIS, P., delivered the opinion of the court.

This was a suit for specific performance. In April, 1887, the appellees conveyed to the appellants, defendants below, a tract of land containing about nineteen acres, adjoining the lands of the Lynchburg Iron Company, situate in Botetourt county. Below and contiguous to this land is a grazing farm owned by the appellees, which at the time of the conveyance to the appellants was mainly (if not solely) watered by a stream flowing through both tracts. The land was purchased by the appellants for the purpose of erecting and operating thereon an ore-washer. It was accordingly covenanted in the deed of conveyance that in case the said stream should be made continuously muddy by the proposed ore washing, so as to render the water therein unfit for stock, the appellants would lay a three-quarter inch pipe from a certain spring branch above, so as to conduct a supply of clear water over the land conveyed to a designated point on the appellee's farm, and there erect a trough for the use of stock.

The bill, which was filed in October, 1889, after setting out, substantially, the foregoing facts, alleges that this covenant has not been observed by the defendants; that they have not laid a pipe and erected a trough, as they covenanted to do, notwithstanding the water in the said stream has been continuously muddy and unfit for stock, in consequence of washing ore on the land, since the date of the conveyance, and although they have often been requested so to do. The bill also states that the complainants have been compelled, in consequence of the defendants' default, to drive their stock a considerable distance to water, whereby they have been greatly inconvenienced and damaged. And the prayer of the bill is that the defendants be required to specifically perform their covenant, and to make proper compensation to the complainants for the damage sustained by them, etc.

The defendants being non-residents, there was an order of publication. An attachment was also sued out, which was levied on the said nineteen acres of land.

At the May term, 1890, a decree was entered for the specific performance of the contract, with a further provision that the defendants pay to the complainants seven hundred and fifty dollars damages for the breach of the contract.

At the ensuing October term, the defendants appeared and filed their petition, praying that the decree be set aside, and that they be allowed to make defence. They thereupon, with the leave of the court, demurred to the bill, and also answered. In their answer they stated, among other things, that since the commencement of the suit they had laid the pipe and erected a trough, as they agreed to do, and that this was done before the decree was entered.

The cause was then referred to a commissioner, with directions to ascertain and report, among other things, what damages, if any, the complainants had sustained by reason of the alleged breach of the contract; in obedience to which decree the commissioner subsequently reported that they had been damaged to the amount of nine hundred dollars. This finding was afterwards, upon exceptions to the report, reduced by the court to seven hundred and fifty dollars; and by the same decree it was ordered that "performance of said contract be confirmed to the complainants."

1. A number of objections have been urged to this decree, none of which, in our opinion, are well founded. In the first place, the case stated in the bill is undoubtedly within the jurisdiction of a court of equity. The contract therein sought to be enforced is not one requiring personal labor, or the exercise of any peculiar skill or judgment, or involving the performance of continuous duties and supervision. On the contrary, it is such a contract as could be readily performed by almost any ordinary workman; and its nature is such that the remedy at law for its breach is inadequate.

This brings the case within the general rule that a court of equity has jurisdiction to enforce specific performance of a contract by a defendant to do defined work upon his own prop-

erty, in the performance of which the plaintiff has a material interest, and which is not capable of adequate compensation in damages; as, for example, an agreement on the part of a railway company to make an archway under its tracks, or to construct a siding at a particular point, for the convenience of an adjoining land-owner. 1 Story, Eq., sec. 721 *a; Storer* v. *Great Western Railway Co.*, 2 Y. & C. Ch., 48; *Green* v. *West Cheshire Railway Co.*, L. R. 13 Eq., 44.

It is, moreover, well settled that, as ancillary to its authority to decree specific performance, a court of equity may award damages for a breach of the contract, to be assessed either by an issue of *quantum damnificatus* or by a master, at its discretion. *Phillips* v. *Thompson*, 1 Johns. Ch., 131; *Nagle* v. *Newton*, 22 Gratt., 814; *Campbell* v. *Rust*, 85 Va., 653.

This, indeed, is not disputed. But the appellants contend that their performance of the contract in question before the entry of the decree, although subsequent to the filing of the bill, left nothing to be specifically enforced, and consequently that the ancillary power to decree damages was likewise at an end. In other words, the contention is that after the pipe was laid and the trough erected, the suit was nothing more than a suit to recover damages, of which equity has not jurisdiction. But this is a mistaken view. The court having acquired jurisdiction of the case upon equitable grounds, no subsequent act of the defendants could oust that jurisdiction. For it is a familiar principle, as laid down by Judge Staples in *Walters* v. *Farmers Bank*, 76 Va., 12, that when a court of equity has once acquired jurisdiction of a cause, it may go on to a complete adjudication, even to the extent of establishing legal rights and granting legal remedies, which would otherwise be beyond the scope of its authority. In that case the object of the suit was to subject the separate estate of a married woman to the payment of a certain negotiable note upon which the appellant was endorser, or to require the appellant to pay it. In the progress of the cause it appeared

that there was, in fact, no separate estate; whereupon it was insisted that as the supposed existence of a separate estate was the sole ground for going into equity, the court could proceed no further, and that the bill should be dismissed. But this view was rejected and a decree rendered against the appellant for the debt, which this court affirmed, on the principle above stated. So, it has been held that where the complainant was originally entitled to a specific performance, but pending the suit the subject-matter of the litigation is abstracted or destroyed, he will not be turned round to his remedy at law, but compensation or damages will be decreed him. 2 Story, Eq., sec. 794; *Nelson* v. *Bridges*, 2 Beav., 239; *Chapman* v. *M. R. &c. R. R. Co.*, 6 Ohio St., 119.

2. As to the further point made by the appellants in the petition for appeal, upon the authority of *Pennoyer* v. *Neff*, 95 U. S., 714, that State courts have no power to render judgments or decrees *in personam* against non-resident defendants who are summoned merely by publication, it is enough to say that here the defendants, after the rendition of the decree of May term, 1890, appeared and defended on the merits, thus submitting themselves to the jurisdiction of the court; so that the case stands upon the same footing, so far as the power and jurisdiction of the court is concerned, as if they had been personally served with process at the commencement of the suit.

3. Both sides complain of the amount of damages awarded; the appellants contending that the amount is excessive; while the appellees insist that the sum reported by the commissioner, viz.: nine hundred dollars, ought to have been allowed, and that the circuit court erred in reducing the amount to seven hundred and fifty dollars. Without reviewing the evidence before the commissioner, which is quite voluminous, and which we have carefully examined, we deem it sufficient to say that we see no reason to reverse or amend the decree on this or any other point. It is, therefore, affirmed.

DECREE AFFIRMED.