# Richmond.

McAllister, Trustee, and Others v. Harman and Others.

December 11, 1902.

1. Judicial Sale—*What Constitutes—Case in Judgment.*—A judicial sale is one made by a court of competent jurisdiction in a pending cause, through its authorized agent. In the case in judgment, a suit was pending, having for its object, amongst other things, the partition of a tract of land, and a sale of a moiety thereof to pay the debts of the owner, who was dead. Pending this suit, and before any partition was made, the plaintiff therein, who, as trustee, held the legal title to decedent's moiety, and the owner of the other moiety united in giving an option to a third party to purchase the land as a whole, at a given price, which option was subsequently accepted and closed, but not until after the partition had been made and confirmed. The court neither made nor authorized the sale, and had no power under the pleadings to sell one moiety of the land. The sale did not purport to be a judicial sale, but a sale by the parties, although it was reported to and confirmed by the court, and the general receiver of the court directed to collect the purchase money, the vendors consenting thereto. The decree confirming the sale refers to the sale as made by the vendors mentioned in the contract, naming them.

*Held:* This was not a judicial sale.

2. Sale of Land—*What Title Vendor to Make.*—A vendor, in the absence of any stipulation to the contrary, is bound to make a good title, free from encumbrance of every description which may embarrass the full and quiet enjoyment of the premises by the purchaser.

3. Specific Performance—*Vendor's Title.*—The burden is on the vendor of real estate who seeks specific execution of the contract to show that he has such title as he has contracted to convey.

4. Specific Performance—*Joint Sale by Two—Defective Title of One.*— On a joint purchase of an entire tract of land from a trustee and an-

other, the purchaser cannot be compelled to take any part of the land, unless he can get good title at least to such other's moiety, as well as such title as the trustee could convey to the moiety held by him.

5. SPECIFIC PERFORMANCE—*Vendor Claiming Under Junior Grant—Adverse Possession.*—A vendor claiming under a junior grant, accompanied by adverse possession, must show that his title has been perfected by adverse possession in order to maintain a bill for specific performance.

6. SPECIFIC PERFORMANCE—*Defective Title of Vendor—Delay—Depreciation—Case in Judgment.*—Specific performance will not be decreed in favor of a vendor who has long delayed perfecting his title after the vendee has demanded it of him, and especially when the land, in the mean time, was diminishing in value. Nor under the facts and circumstances of the case in judgment was the vendor entitled to any further time within which to perfect his title.

7. SPECIFIC PERFORMANCE—*Refusal—Decree in Favor of Purchaser—Complete Justice.*—Where specific performance is refused a vendor on account of his inability to make good title, a court of equity will not, as a rule, leave the purchaser to his action at law to recover damages for breach of contract, but, having properly acquired jurisdiction of the case, will proceed to do final and complete justice between the parties by ordering the necessary accounts to ascertain the purchase money paid, the rents with which the purchaser may be chargeable, the damages for waste, if any, the value of permanent improvements for which compensation should be allowed, and the taxes paid by the purchaser, if any, and having ascertained the balance due will make a decree that the same shall be paid, and, in favor of the purchaser, will ordinarily charge it upon the land.

Appeal from a decree of the Circuit Court of Bath county, pronounced April 6, 1901, in a suit in chancery under the style of *Glendy's Adm'r and Others* v. *Moon and Others*, to which the appellees were made parties, as alleged purchasers, by a rule served on them.

*Affirmed.*

The opinion states the case.

*J. T. McAllister, Benjamin Haden* and *W. M. McAllister*, for the appellants.

*R. L. Parrish & Son* and *A. C. Braxton*, for the appellees.

Buchanan, J., delivered the opinion of the court.

This suit was brought to the April rules, 1890, by William M. McAllister, administrator and trustee of Robert J. Glendy, deceased, and others to settle the accounts of the said administrator and trustee, to ascertain the debts of the said decedent and their priorities; to partition the "Wilderness" lands between Charles D. Glendy and the heirs of Robert J. Glendy; to sell the lands assigned to the latter, and out of the proceeds to pay the decedent's debts and distribute the residue, if any, among those entitled. The bill also contained a prayer for general relief. At the June term, 1890, commissioners were appointed to make partition of the land known as the "Wilderness estate." The commissioners made partition thereof, and reported their action to the court, which was confirmed at the September term, 1890, of the court, and ordered to be certified to the County Court of Bath county for recordation, as provided by statute. On the 6th day of September, 1890, after the commissioners had been appointed to partition the lands, but before the confirmation of their report, William M. McAllister, trustee (in a certain deed of trust executed by Robert J. Glendy), and Charles D. Glendy, entered into an agreement with Harman and Berkeley by which they gave the latter an option upon the lands, running until the 1st day of January, 1891, at the price of $17,000, one-half to be paid when the option was closed, and the other half twelve months after that date, with interest. The agreement further provided that in the event the option was closed, one-half of the purchase price of the lands was to be paid to such person or persons as the Circuit Court of Bath county might direct in the pending suit of *Robert J. Glendy's Adm'r* v. *Robert J. Glendy's Heirs*, and the other half of the purchase price was to be paid to or settled with Charles D. Glendy.

In December, 1890, Harman and Berkeley elected to purchase the land under their option, and William M. McAllister, trustee, reported the sale to the court, and asked that it might be confirmed by the court, which was done in vacation, after notice to Harman and Berkeley. By the same decree, William M. McAllister, the general receiver of the court, was directed to collect from Harman and Berkeley the cash payment, including that due to Charles D. Glendy, he consenting thereto, and hold the same subject to the future order of the court. By a decree entered at the April term, 1891, the general receiver was directed to collect the residue of the purchase price at or before maturity. At the September term, 1891, it appearing to the court that Harman and Berkeley were in default in making their cash payment, a rule, upon motion of the plaintiff, was awarded against them, returnable to the first day of the next term of the court, to show cause why the property purchased by them should not be resold at their costs and charges. The rule was docketed at the April term, 1892, of the court. At the September term, 1893, of the court, Harman and Berkeley filed their answer to the rule, in which, among other things, they deny that they are bound by the vacation decree of the court confirming the sale to them, as they were not parties to the suit. They state in their answer that, about the time that decree was entered, they transferred whatever rights they had in the property to Dr. J. S. Lawrence, who agreed to become the purchaser thereof at the price stipulated in the said option contract; that he had, as they are informed, paid to the receiver about $2,500 of the purchase price, and given a negotiable note to him for $3,000 more thereof; that the said lands were not offered for sale by the court, but that the option contract was made by C. D. Glendy, the owner of one-half thereof, and by William M. McAllister, trustee, in whom was the title to the other half; that the op-

tion contract embraced about 4,400 acres of land, and provided for a good title; that, at the time they entered into that contract, and at the time Dr. Lawrence agreed to become the purchaser of the lands, the title to the lands was believed by them and others interested to be perfect, but since then a suit had been instituted and is now pending in the same court in which the plaintiffs set up a title to all of said lands except about 900 acres; that they are not advised as to the merits of the claim asserted in that suit, but the suit itself has placed a cloud upon the title to the lands, and had, as they are reliably informed, prevented the payment of the purchase price in full by Dr. Lawrence, and had defeated him in carrying out a sale of the lands which he had made; that the respondents had never contemplated purchasing less than the whole of the lands contracted for, and that the court would not compel them to take one-fifth of what they intended to purchase, but would either release them, or require their vendors to remove the cloud from the title without delay; but if the court should be of opinion that they were bound as purchasers, no sale should be decreed until the title to the property be made secure, and, if it cannot be made secure without delay, they ask to be released, and deny that their vendors can, under the circumstances, compel them to take a clouded title, or enforce a specific execution of the contract until the cloud upon the title shall have been removed.    At the September term, 1894, a decree was entered by which one of the commissioners of the court was directed to ascertain whether or not Harman and Berkeley had really become purchasers of the land, and what was the condition of its title.    In April, 1895, the commissioner made a report which, by consent of parties, was recommitted.    In September, 1895, on motion of the plaintiffs, it being reported to the court that the tenant in possession of the land was committing waste by cutting and destroying valuable timber, the court entered an

order restraining Harman and Berkeley, their agents and assigns, and the tenant in possession, from committing waste. In April, 1896, the court ordered its general receiver to rent out the land for one year, which was done, and such renting was continued until the decree appealed from was entered. At the September term, 1897, McAllister, trustee, and C. D. Glendy filed their demurrer and replication to the answer of Harman and Berkeley, in which replication they insist that the sale to Harman and Berkeley is valid, having been confirmed by the Circuit Court, with their full knowledge and consent, and that the title to the lands is beyond question—the entire property having been in the actual and uninterrupted and adverse possession of the vendors and those under whom they claim for more than fifty years; that the plaintiffs in the chancery suit referred to in the answer of Harman and Berkeley have no connected title to, and no actual possession of, any part of the land; that their claim does not cast a cloud upon the Glendy title, and that it would be a useless task to require them (McAllister, trustee, and Glendy) to remove such supposed cloud.

In April, 1898, the commissioner reported that Harman and Berkeley had become the purchasers of the land in accordance with the provisions of the option contract, and that the chancery suit which was alleged in the answer of Harman and Berkeley as casting a cloud upon the title to the lands had been dismissed by the Circuit Court, and, as he was informed, its action had been affirmed by the Court of Appeals, and that whilst the commissioner had no information as to what portions of said lands were involved in that suit, the cloud thereby cast upon the title to the property by its institution and prosecution did not seem to have been of a very serious character, especially in view of the sworn and uncontradicted statements of the replication of C. D. Glendy and Wm. M. McAllister, trustee.

Harman and Berkeley excepted to this report. Without passing upon the exceptions, the report was recommitted to the commissioner. In April, 1900, Harman and Berkeley moved the court to dismiss the commissioner from further consideration of the cause, and, without waiting for a report from the commissioner or granting further time for the vendors to complete their evidence, to proceed to hear and decide the cause upon the rule and proceedings had thereunder. This motion was resisted by the vendors of the land, who moved the court to continue the cause until the next term. This latter motion was resisted by the vendees. The court overruled the motion of the vendees, and continued the cause for the vendors with instruction to the commissioner to file his report in time for the cause to be heard upon its merits at the next term.

In September, 1900, the commissioner reported that he only learned of the order entered at the April term, 1900, a few days before, that he had given notice to the parties, and taken the deposition of Wm. M. McAllister, trustee, but had been unable to take the evidence the parties desired. On the next day after that report was filed, Harman and Berkeley moved the court to discharge the rule which was pending against them, and to release them from the purchase of the land described in the rule and proceedings had thereunder. This motion was resisted by the vendors, who moved the court to continue the cause "for the purpose of allowing them to take further evidence on the line of showing a perfect title to all the land in question by adversary possession." This motion to continue was overrruled, and the cause was made a vacation cause.

At the April term, 1901, the court entered a decree in which it held that the sale to Harman and Berkeley was not a judicial sale, but a sale *in pais*; that the vendors had not shown their ability to convey to the vendees such title to the lands sold as would entitle them to a decree against the vendees for a spe-

cific performance of the contract, and that even if the vendors could and would now remove the cloud upon the title of said lands, it would be inequitable to require the vendees to comply with their contract of purchase at that late date, after the land had materially diminished in value, and that the vendors had, by their delay in removing the cloud upon the title (even supposing that they could at this time remove the same), deprived themselves of the right to have the contract specifically performed, dismissed the rule against Harman and Berkeley to show cause, annulled and set aside the contract of sale, and declared that Harman and Berkeley and their assigns who had paid the purchase price of the land, so far as it had been paid, should have an equitable lien on the land to secure its repayment, and directed the necessary accounts to ascertain the balance due. From that decree this appeal was allowed.

· It seems to be conceded that if the sale to Harman and Berkeley was a judicial sale, the purchasers would have no right under the facts of the case to raise any question as to the title of the land purchased by them.

The first question, therefore, to be considered is, whether or not the sale was a judicial sale.

A judicial sale is defined to be one which is made by a court of competent jurisdiction in a pending cause, through its authorized agent. *Terry* v. *Coles*, 80 Va. 695 ; *Alexander* v. *Howe*, 85 Va. 198, 201, 7 S. E. 248 ; Rorer on Judicial Sales (2d ed.), sec. 1. See also *Christian* v. *Cabell*, 22 Gratt. 82.

Tested by this definition, it is clear that the sale in question was not a judicial sale. The court neither made the sale nor authorized McAllister, trustee, and Glendy to make it. The agreement to sell does not purport to be a sale by the court, nor its authorized agent or agents, but is a sale by the parties of the first part, one as trustee, and the other in his own right. Its validity is not made to depend, and did not depend upon the

court's confirmation. It is true that the sale was reported to
the court by McAllister, trustee, and that it entered a decree
approving and confirming it, and directed—the vendor Glendy
consenting—that the purchase price should be paid to the gen-
eral receiver of the court, but the decree refers to the sale as
made by McAllister, trustee, and C. D. Glendy, and states
that it appears from the report of sale that Harman and Berke-
ley had made their purchase from C. D. Glendy in his own
right, and from McAllister, trustee.

It is further true that the pleadings in the cause were suffi-
cient to authorize the court to have decreed a sale of the moiety
of the land assigned to McAllister, trustee, in the partition
made between himself and C. D. Glendy. But the court had
no jurisdiction under the pleadings to order the sale of the
moiety assigned C. D. Glendy at the time the sale was made.
The land was capable of partition in kind, had been so par-
titioned, and the parties assigned their respective moieties. Re-
port of that partition had been confirmed by the court. All
this was done before Harman and Berkeley had determined to
close their option and become purchasers of the land.

The next error assigned is that the court erred in holding
that the record showed that there was any cloud upon the title
to the land, and in holding that it was the duty of the vendors
to show that their title was free from objection.

A vendor, in the absence of any stipulation to the contrary,
is bound to make a good title, free from encumbrance of every
description which may embarrass the full and quiet enjoyment
of the premises by the purchaser. *Garnett* v. *Macon*, 6 Call,
368, Fed. Cas. 5245; *Jackson* v. *Ligon*, 3 Leigh, 161; *Hen-
dricks* v. *Gillespie*, 25 Gratt. 193-4; 2 Minor's Inst. (4th ed.),
876.

The burden is on the vendor who asks for the specific exe-
cution of a contract to show that he has such title as he con-

tracted to convey. Judge Allen in *Carrington* v. *Otis*, 4 Gratt. 253; *Hendricks* v. *Gillespie*, 25 Gratt. 197. See also Fry on Spec. Per., sec. 824; 2 Minor's Inst. 893-4.

Whether in this case the purchasers had the right to demand from McAllister, trustee, any better title than he held as trustee is immaterial. They clearly had the right to a good title to the C. D. Glendy moiety of the land; and, being a sale by McAllister, trustee, and Glendy, jointly, of the whole land, the purchasers would not be compelled to take any part of the land unless they could get good title, at least, to C. D. Glendy's moiety, as well as such title to the other moiety as McAllister, trustee, could convey.

The cloud upon the title to which the court's attention was called in Harman and Berkeley's answer to the rule, was the pendency of the suit of *Bailey* v. *Byrd*. In that suit, which is a part of the record in this case, it appears from the answer of C. D. Glendy, and of the heirs of Robert J. Glendy, that about two thousand acres of the "Wilderness tract" were within the lines of an older grant, and that the Glendy title to that two thousand acres is based upon adverse possession, under junior grants, for fifty years or more. It may be that a court of equity will specifically execute a contract for the sale of land at the suit of the vendor who claims under a junior grant where he shows that his title has been perfected by adversary possession. The record in this case shows that the Glendy title to a large part of the land in controversy depends upon adversary possession under junior grants, yet the evidence does not show that the vendors and those under whom they claim have had such possession.

Although objection to the title was made in 1893 by the purchasers, and the demand made that they should be released from their purchase unless the objection to the title should be removed without delay, yet the vendors had wholly failed to

show such title to the land as the purchasers were entitled to under their contract, when the decree appealed from was entered in 1901. This, too, in face of the fact that the land was diminishing in value during that period. The vendors were clearly not entitled to a specific execution of the contract upon the record as it was when the court entered the decree appealed from. Nor were they entitled, under the facts and circumstances of the case, to further time within which to show that they could make such title as the purchasers were entitled to call for.

Neither did the court err in not leaving the parties to their remedy or remedies at law when it refused specific execution of the contract.

Although specific performance be refused by the court, it will not usually, in a case like this, turn the purchaser, who has paid the purchase price in whole or in part, round to his remedy or remedies at law to recover damages for the breach of contrace, but, having properly acquired jurisdiction of the case, will proceed to do final and complete justice between the parties, by ordering the necessary accounts to ascertain the purchase money paid, the rents with which the purchaser may be chargeable, together with damages for waste for which he may be accountable, the value of permanent improvements for which he should be allowed compensation, the taxes paid by him, if any, and, having ascertained the balance due, the court will make a decree that the same shall be paid, and in favor of the. purchaser will ordinarily charge it upon the land. *Payne* v. *Graves*, 5 Leigh, 561; *Bowles* v. *Woodson*, 6 Gratt. 78; *Stearnes* v. *Beckham*, 31 Gratt. 420 (Judge Staples' opinion); *Grubbs* v. *Starkey*, 90 Va. 831, 20 S. E. 784; *Newberry* v. *French*, 98 Va, 479, 36 S. E. 519; 2 Minor's Inst. (4th ed.), 875.

We are of opinion that there is no error in the decree complained of, and that it should be affirmed.

*Affirmed.*