# Richmond.

## MOON'S ADMINISTRATRIX v. HIGHLAND DEVELOPMENT COMPANY & OTHERS.

### November 23, 1905.

1. SUBROGATION—*Act of Limitations—Consent Decree—Cross Bill—Case in Judgment.*—For value received, land was conveyed to a trustee for the sole and separate use of a married woman, for and during the term of her natural life, with power to her to appoint the fee by will, which power she exercised in favor of her son and daughter in equal shares. The grantor reserved a lien in the deed for $3,000. Pending the life estate the woman borrowed $4,000 to pay off the aforesaid lien and accumulated interest, which was so applied. The woman and her husband executed their bond for the amount and united with her trustee, and the beneficiaries of the reserved lien, in a deed reciting the payment of the lien and conveying the land in fee to secure the $4,000 loan. The title of the daughter to one-half the fee in remainder devolved upon her father the husband of the married woman. In a suit to settle up the father's estate and to pay his debts it is charged in the bill that the son is the owner of one-half of this tract of land, which is liable for half of the $4,000 debt, and the father was the owner of the other half which was liable for the other half. The son was a party to this suit and consented to a decree charging his land with one half of the debt two days before the time at which it is alleged the debt became barred by act of limitation. The creditor secured in the $4,000 debt was also a party to the suit, and, after the entry of said consent decree, filed a cross-bill against the son and others, setting out the lien reserved, the loan of the $4,000 to pay it off, and its application thereto, the bond and deed above mentioned, and other proceedings in the suit, and asking to be subrogated to the rights of the creditor in the lien secured first above mentioned.

*Held*:
  (1) The land devised to the son is liable for one-half the $4,000 debt.
  (2) The debt is not barred by the statute of limitations.
  (3) It was a proper case for a cross-bill, and the demurrer thereto was properly overruled.

2. EQUITY—*Partition—Creditor's Bill—Parties—Adverse Claimant—Cloud on Title.*—Upon a bill filed for partition and for other purposes, where the decrees and proceedings in the case have made it in effect a creditor's bill for the satisfaction of liens due by the joint owners, and binding upon the estate to be partitioned, it is error to dismiss the bill as to a defendant asserting an adverse claim to the land, or a part thereof, which is to be sold to satisfy such liens. In such case all clouds upon the title should be removed, and the amounts and respective priorities of the liens thereon should be fixed and ascertained before any decree of sale is made. .

Appeal from a decree of the Circuit Court of Highland county in the chancery suit of *Glendy's Admr.* v. *Glendy's Heirs.* In this cause a lien was asserted by Wood's Exor's which was contested by Moon's administratrix. From a decree establishing the debt and dismissing the cause as to the Highland Development Co., Moon's administratrix applied for and obtained this appeal.

*Reversed in part.*

The main facts in this case appear in the opinion of the court. After the case of *McAllister* v. *Harman,* 101 Va. 17, 42 S. E. 920, went back to the Circuit Court, the executors of Warner Wood filed their cross-bill, in which they ask to be allowed to enforce the Warner Wood debt spoken of in the opinion of the court. To this bill C. D. Glendy filed his demurrer and answer. . He claimed that Mary J. Glendy had only a life estate with power of appointment, and that the Warner Wood debt was not lien on his land, and, further, that the right to enforce the debt was barred by the statutes of limitation. In his answer, he further set up the fact that he had sold the land to J. Yost, and conveyed it to him, and that, on the 27th day of April, 1903, the Highland Development Company had

notified Yost that it was the owner of a large portion of the land; and, on the motion of the complainants in the cross-bill, the court ordered and decreed that the said Yost and the Highland Development Company be made parties defendant to the suit, and that the clerk of the court should forthwith issue process against them, returnable to rules, requiring, amongst other things, the said Highland Development Company to show what interest, if any, it had in the property involved in the cause, and to assert such interest, and that upon its failure to do so, a decree would be entered against it by default. The Highland Development Company never appeared. At a subsequent term of the court, on motion of William M. McAllister, trustee, one of the complainants in the original bill, the suit was dismissed as to the Highland Development Company. The language of the decree upon this point is as follows:

"It appearing . . . that the Highland Development Company claims by a title adverse to that of any party to this cause, and not by, through, or under any of said parties, or their grantors, a part of the C. D. Glendy land involved in this suit; and that the claim of said Highland Development Company is based on a grant from the Commonwealth adverse to the grant under which the other parties claim, and the court being of opinion that the title of the Highland Development Company cannot be properly tried in this cause, doth decide that the process against the Highland Development Company was improvidently awarded, and the said Highland Development Company is dismissed as a party to this suit."

*Patrick & Gordon,* for the appellants.

*Daniel Harmon, John W. Fishburne, Micajah Woods* and *W. M. McAllister,* for the appellees.

KEITH, P., delivered the opinion of the court.
            VOL. CIV—70

A controversy between certain parties to this suit was disposed of at a former term of this court, and is reported under the style of *McAllister* v. *Harman,* 101 Va. 17, 42 S. E. 920.

The cause having been remanded to the Circuit Court, a decree was entered on the 29th of April, 1903, reviving it against the executors of Warner Wood, one of the defendants, and referring it to a commissioner to state an account showing the balance due upon the bond and lien proved in favor of Warner Wood; an account of the collections and disbursements made by McAllister, as general receiver of the court, by reason of the decree authorizing him as such receiver to collect from Lewis Harman and Carter Berkley the purchase money for the lands involved, showing the balance in his hands as such receiver and how the fund so collected by him had been applied (see *Mc-Allister* v. *Harman, supra*); an account of all collections and disbursements made by McAllister, general receiver of the court, of funds involved in the cause, and the amount still due and uncollected on the rent account; an account showing the balance in the hands of McAllister, as trustee of Robert J. Glendy, and as administrator of R. J. Glendy, deceased; and an account of all the claims proved in the cause and to what extent and how any of said claims are payable and binding upon all the lands involved in the cause and which of said claims are payable exclusively by R. J. Glendy's estate, or are binding upon that part of the real estate assigned to the estate of R. J. Glendy; and to what extent, if any, Lewis Harman and Carter Berkley or their assignees may be entitled to reimbursement or subrogation by reason of payments made by them or either of them to William M. McAllister, general receiver.

Upon the coming in of this report it appeared that the first lien was for taxes; that in the second class were attachments issued by Barley and Thomas; in the third class, a sum due McAllister as receiver; fourth, the debt due Warner Wood; fifth, that of D. B. Taylor & Company; and, sixth, that of Julia A. Moon, administrtrix of J. Summerfield Moon, with interest from December 1, 1904.

To this statement of liens exceptions were filed by Warner Wood's executors and Julia A. Moon, administratrix, in which they unite in an attack upon the first three classes, and Julia A. Moon, in addition, attacks the debt of Warner Wood as not constituting a lien upon the land which had been assigned to C. D. Glendy.

The court overruled these exceptions and directed a sale of the moiety of land which had been assigned to R. J. Glendy; and with reference to that portion alloted to C. D. Glendy, and which appears to have been purchased by Jacob Yost, the decree provides that the said Yost may have sixty days from the adjournment of· the court to notify the commissioners appointed to sell whether or not he proposes that his purchase shall be adopted as a judicial sale by the court, in which event the purchase money is to be paid to the commissioners, and if he fails to comply with the terms of his purchase, and C. D. Glendy, or some one for him, shall fail to pay the debt chargeable on that share of land within sixty days, then the commissioners were directed to sell that moiety of land also.

From this decree an appeal was obtained to this court.

The land in controversy belonged originally to Robert J. Glendy, who on the 20th of November, 1876, conveyed it to Hugh W. Sheffey, trustee, reciting in the deed that the grantor desiring to provide the means of paying his debts by the conveyance to trustees for that purpose of various tracts of land, in all of which Mary J. Glendy had a right of dower, and it being desirable that said Mary J. Glendy should unite in the deed of trust so as to secure a perfect title to the purchasers, and she having agreed to unite in said deed upon condition that Robert J. Glendy should convey to a trustee the property therein described and upon the trusts therein declared; therefore, the said Robert J. Glendy granted to Hugh W. Sheffy and his heirs certain land which he describes, known as "The Wilderness;" "but it is expressly understood that a lien is retained upon said Wilderness estate for the sum of three thousand dollars,

payable in three equal annual payments with interest from this date and in favor of Hugh W. Sheffy and James Bumgardner, Jr., trustees for said Robert J. Glendy, under the trust deed aforesaid of even date with this deed." This conveyance of Nov. 20, 1876, was declared to be upon the following trusts: "That said Hugh W. Sheffy shall hold the property for the sole and separate use of said Mary Jane Glendy free from the debts and contracts of her husband, and in the event of the death of said Robert J. Glendy before the said Mary J. Glendy that said trustee will convey said real estate to the said Mary J. Glendy to hold it during her natural life with remainder in fee to such persons as she may by deed or will appoint, and in default thereof to her right heirs, and in case the said Mary Jane Glendy shall die before her said husband, then the said trustee will convey said real property to such persons as the said Mary Jane Glendy may in writing, attested by three witnesses, or by her last will and testament, designate and appoint, and in default of such appointment, to her children and the descendants of such as may be dead, *per stirpes.*"

On the 8th of February, 1882, Robert J. Glendy and Mary J. Glendy, his wife, parties of the first part, H. W. Sheffy and James Bumgardner, Jr., trustees, created by the deed of Robert J. Glendy dated November 20, 1876, parties of the second part, and C. D. Fishburne and James Bumgardner, trustees, of the third part, and Warner Wood of Albemarle county, Virginia, of the fourth part, recite that whereas Robert J. Glendy and Mary J. Glendy, his wife, two of the parties of the first part, are indebted to the said Warner Wood in the sum of four thousand dollars, evidenced by their bond of even date, payable on demand with interest from date, which they desire more fully to secure to said Wood; and whereas there was in the deed first above referred to a lien reserved on the land thereby conveyed (which is the same land conveyed in the deed of February 8, 1882), to secure the payment of a debt of three thousand dollars with interest from 20th November, 1876, to

Messrs. H. W. Sheffy and James Bumgardner, Jr., the trustees named in R. J. Glendy's general deed of trust (to-wit, the second deed hereinabove described), which last named debt has been paid in full out of said sum of four thousand dollars, as evidenced by the signatures hereto of said parties of the second part, who hereby release the land hereinafter conveyed from the lien reserved as aforesaid. Now, therefore, in consideration of the premises Robert J. Glendy and his wife, Hugh W. Sheffy as trustee of Mary J. Glendy and with her consent, convey to C. D. Fishburne and James Bumgardner, Jr., the "Wilderness," the "Fowler" and the two "Nelson" tracts, which are described in the deed, except 785 acres sold to various parties named in the deed; the whole quantity conveyed being 3,906 acres; in trust to secure to Warner Wood and his heirs the payment of the debt of four thousand dollars, with interest thereon till paid.

Mary J. Glendy died before her husband, leaving a last will and testament, by which she devised the whole of her estate both real and personal to her husband during his natural life, the personal property at his death to be disposed of as he might see fit and proper and "the real estate to be divided equally between my son Charles D. and daughter Edmonia Glendy, to be enjoyed by them forever." This will bears date the 3rd day of March, 1884, and was signed and sealed by the testatrix in the presence of three attesting witnesses, and was admitted to probate at the January term, 1885, of the County Court of Bath county.

Edmonia Glendy married a Mr. Bowler and died leaving a daughter who died under twenty-one years of age from whom Robert J. Glendy inherited one-half of the estate. By deed of the 17th of May, 1889, Robert J. Glendy conveyed the "Wilderness" estate to McAllister, trustee, to secure certain creditors therein named.

At April rules, 1890, William M. McAllister, as administrator and trustee of Robert J. Glendy, deceased, certain per-

sons secured by the deed of May 17, 1889, and others, heirs at law of Robert J. Glendy, filed their bill, in which they set forth a debt to the Valley Bank of Staunton due by Robert J. Glendy and upon which some of the plaintiffs were endorsers, deduce the title of Robert J. Glendy to the "Wilderness" tract through the various deeds which we have recited, set forth the debt due by bond to Warner Wood and the payments upon it, and charge, "that the residue of said bond and interest is still due and unpaid, and constitutes a lien upon said Wilderness estate, one-half of which should be paid by the said C. D. Glendy and the remaining half whereof should be paid by the estate of the said Robert J. Glendy, deceased." They further charge that partition should be made of the said Wilderness estate between the said Charles D. Glendy and the estate of the said Robert J. Glendy, deceased, and that one-half of the trust debt due to Warner Wood should be provided for out of a sale of the half of said Wilderness estate which shall be allotted and assigned to the said Robert J. Glendy, and the other half made a charge upon the half assigned to C. D. Glendy. Charles D. Glendy, Warner Wood, and C. D. Fishburne and James Bumgardner, Jr., trustees in the deed to secure the debt of Warner Wood, are made parties and required to answer.

In August, Warner Wood and his trustees answered, and state that by deed dated February 8, 1882, Robert J. Glendy and his wife, Mary J. Glendy, conveyed the land therein mentioned and described to the defendants, James Bumgardner, Jr., and C. D. Fishburne, trustees, to secure the payment of their bonds to Warner Wood for $4,000, as described in said deed of trust; that the deed of trust was executed also by Hugh W. Sheffy, as trustee of said Mary J. Glendy under deed of said Robert J. Glendy and wife, dated 20th November, 1876, and by said Sheffy and James Bumgardner, Jr., trustees in a general deed of trust by said Robert J. Glendy dated November 20, 1876, thus giving to said defendants as trustees the first lien on said land to secure said debt to Warner Wood; that

the interest on said debt had been paid up to the 8th day of August, 1888, so that all the principal and interest on the same at 6 *per cent. per annum* is now due from the 8th of August, 1888.

Accounts were taken under this decree, and subsequently a contract of sale was made to Harman and Berkeley, and the suit growing out of that contract was before this court in the case of *McAllister, trustee,* v. *Harman, supra.*

By a decree entered on the 29th of April, 1903, which has already been referred to, after numerous accounts had been ordered it is provided as follows: "And by consent of parties the right and privilege is given to C. D. Glendy to take possession and control that part of the real estate involved in this cause which was assigned to him, subject, however, to all liens existing thereon and especially subject to the deed of trust lien in favor of Warner Wood covering all the real estate involved in this cause, it being distinctly understood that such privilege and right to take possession and control said real estate shall not impair or affect any existing lien on said real estate or the right of any holder or owner of any lien thereon to enforce the same."

At August rules, 1903, Micajah Woods and J. W. Fishburne, executors of Warner Wood, deceased, against whom this suit had been revived by consent, filed a cross-bill, in which they set out the proceedings theretofore had so far as they were pertinent to the interests of their testator. They call attention to the fact that the "Wilderness" tract of land had been originally conveyed to Hugh W. Sheffy, trustee, subject to a lien of $3,000 in favor of Hugh W. Sheffy and James Bumgardner, Jr., trustees, holding the lien of $3,000 on the "Wilderness" tract of land, united in the deed under which Mary J. Glendy held, and those claiming under her hold, for the purpose of showing that the aforesaid lien had been paid in full out of the sum of $4,000 which Warner Wood loaned to Robert J. Glendy

and Mary J. Glendy, and which the said deed was executed to secure. The cross-bill charges that the whole of the $4,000 loan was used for the payment of the aforesaid lien and interest, and that by reason of the premises Warner Wood became and has continued to be subrogated to all the rights and remedies of the said Hugh W. Sheffy and James Bumgardner, Jr., trustees, under said lien in addition to the rights which he acquired under the deed of trust aforesaid.

The contract of September, 1890, by which C. D. Glendy and William M. McAllister, trustee, gave an option to Lewis Harman and Carter Berkeley to purchase the "Wilderness" tract, is set out, and a part of the decree of the 18th of February, 1891, is recited as follows: "And the said Charles D. Glendy consenting thereto, the said Lewis Harman and Carter Berkeley shall also pay to the said general receiver that portion of the hand payment contracted to be paid by them to the said Charles D. Glendy, it being manifest to the court that the greater part thereof will be necessary to pay off and discharge Charles D. Glendy's one-half of the trust lien, reported in this cause in the name and favor of Warner Wood."

It is assigned as error that the debt of Warner Wood was allowed as a lien against the lands of C. D. Glendy, (1) because Mrs. Glendy had only a life estate in the property; (2) because the statute of limitations barred the right to enforce the lien; and (3) because the demurrer to the cross-bill should have been sustained.

It will be observed that Mrs. Glendy was not a volunteer, but a purchaser for valuable consideration, as appears from the deed of November 20, 1876, by which the "Wilderness" estate was conveyed to Hugh W. Sheffy, in trust for the sole and separate use of Mary J. Glendy," and in the event of the death of Robert J. Glendy before the said Mary J. Glendy that said trustee will convey said real estate to the said Mary J. Glendy to hold it during her natural life with remainder in fee to such persons as she may by deed or will appoint, and in default

thereof to her right heirs, and in case the said Mary J. Glendy shall die before her said husband, then the said trustee will convey said real property to such persons as the said Mary Jane Glendy may in writing, attested by three witnesses, or by her last will and testament, designate and appoint, and in default of such appointment to her children." The husband survived the wife, who died leaving a last will and testament, by which she devises this estate to her son, C. D. Glendy, and her daughter, Edmonia, from whom Robert J. Glendy derives title.

We are of opinion that her devisees took a fee simple estate.

We are also of opinion that the statute of limitations does not bar the right to enforce the lien.

The statute upon which appellant relies is section 2935 of the Code, which provides that, "No deed of trust or mortgage hereafter given to secure the payment of money, and no lien hereafter reserved to secure the payment of unpaid purchase money shall be enforced after twenty years from the time when the right to enforce the same shall have first accrued, and no deed of trust or mortgage given prior to May first, eighteen hundred and eighty-eight, to secure the payment of money, and no lien reserved prior to May first, eighteen hundred and eighty-eight, to secure unpaid purchase money, shall be enforced after twenty years from the time the right to enforce the same shall have first accrued; provided, the limitation of the right to enforce such deed of trust, mortgage, or lien reserved, shall not expire prior to May first, nineteen hundred and three."

The debt is set forth *in extenso* in the bill filed by McAllister, trustee, and others, and all the parties bound for its payment were before the court; and if the moiety of land belonging to C. D. Glendy could not originally in that proceeding have been sold for the satisfaction of this debt, the difficulty

consisted in a defect in the prayer for relief.    The whole trans-
action out of which this debt grew, all the parties to it, and
the property upon which it was secured were under the juris-
diction of the court in that case.

In this attitude of affairs consent decrees were entered
which fully recognized that the share of Charles Glendy in the
"Wilderness" tract is bound by the lien to secure the Warner
Wood debt; and by the decree of April 29, 1903, he in express
terms consents that it shall be "subject to the deed of trust lien
in favor of Warner Wood covering all the real estate involved
in this cause."    It will be observed that this decree was en-
tered two days before May 1st, 1903, before which date by the
terms of section 2935 it is declared that the limitation of the
right to enforce such deed of trust, mortgage, or lien reserved,
shall not expire.

We think, also, that the cross-bill was properly filed, and
that its effect was to cure any omission existing in the pleadings
up to that time.

"A cross bill is a bill filed by a defendant in a suit against
a plaintiff, or some other defendant, or both, in the same
suit touching the matter in question in the original bill; and it
may be either to obtain a discovery in aid of the defense to
the original bill, or to obtain relief for all parties touching the
matter of that bill. . . .    This bill lies, among other in-
stances, in the following cases: . . .    where a question
arises between two defendants upon a case made out by evi-
dence arising from pleadings, and proofs between the plain-
tiffs and defendants; . . .    and where at the hearing it
appears that the suit already instituted is insufficient to bring be-
fore the court all matters necessary to enable it to decide upon
the rights of all the parties."    1 Barton's Chancery Prac., sec.
101.

In this case the original bill and all the proceedings show that
the executors of Warner Wood, deceased, have a perfect case
as against their co-defendant, C. D. Glendy.    Not only do the

facts recited and proof establish this right beyond peradventure, but C. D. Glendy has conceded it in decrees entered by his consent. It would be a traversty upon justice, under the circumstances disclosed in this record and which we have set out in detail, to turn these executors out of court and declare that their just claim is barred by the statute of limitations.

We are of opinion that the assignment of error, with respect to the debt of Warner Wood as a lien against the land of C. D. Glendy, is not well taken in any of its aspects.

We are further of opinion that there was no error in the decree with respect to the liens established for taxes, amounting to $307.66; for one-half of the Barley and Thomas attachments, amounting respectively to $233.33 and $87.09; or to the amount allowed William M. McAllister, receiver, $465.31.

We are of opinion, however, that there is error in so much of the decree as dismisses the Highland Development Company as a party to the suit. Upon this subject, the decree is based upon the proposition that the Highland Development Company claims by title adverse to any party to this cause and not through any of said parties, following the law as stated by this court in *Pillow* v. *Southwestern Improvement Co.*, 92 Va. 144, 23 S. E. 32, 53 Am. St. Rep. 804, in which the court holds that a partition suit cannot be made a substitute for an action of ejectment, and that to give the court jurisdiction to settle questions of title in such a suit, the defendant must be a person who claims under one who was a joint owner with the plaintiff."

Without undertaking to discuss the effect of the amendment to the statute which has been made since the decision in *Pillow* v. *Southwest, &c., Co.* was rendered, it is sufficient to observe that a partition of the land between C. D. Glendy and R. J. Glendy was not the sole object of this suit, as originally instituted, and subsequent decrees and proceedings in the case have made it in effect a creditor's bill for the satisfaction of liens due by the co-parceners and binding upon the estate to be par-

titioned; so that it is brought within the influence of that very numerous class of cases which require that before real estate can be sold for the payment of debts, all clouds upon the title must be removed and all liens, their amounts and order of priority, be fixed and determined. *Rossett* v. *Fisher,* 11 Gratt. 492; *Horton* v. *Bond,* 28 Gratt. 817; *Hudson* v. *Barham,* 101 Va. 67, 43 S. E. 189, 99 Am. St. Rep. 849, are some of the many authorities upon that point.

For this error we are of opinion that the decree of the Circuit Court should be reversed, and it is affirmed in all other respects.

*Reversed in part.*