Syllabus.

# Richmond.

RICHARDSON v. JONES, TRUSTEE, AND OTHERS.

February 7, 1907.

1. JUDICIAL SALE—*What Constitutes—Case in Judgment.*—Where a sale is made by a commissioner appointed to sell under a decree of a court having jurisdiction to sell the property, whether made publicly or privately, it only becomes a sale when confirmed by the court, and when confirmed it is a judicial sale. The case in judgment was a suit brought under section 2616 of the Code by a trustee who had no power of sale. In his bill he set forth a definite offer by the complainant and another for thirty acres of the land, and prayed that the court would direct the sale to the aforesaid purchasers to be consummated, and for general re- lief. A decree was entered directing the complainant, as special commissioner, to make said sale. He subsequently reported that he had made the sale, and it was confirmed. Complainant, in answer to a rule to show cause why the land should not be re- sold at his risk for his failure to comply with the terms of sale, among other defenses, denied that he had ever agreed to become a purchaser from the commissioner, or that the sale was a judi- cial sale; but the evidence is such as to satisfy the court that he did become such purchaser on the terms prescribed by the decree of sale, and, upon these facts, it is held that the sale was a judicial sale. The complainant had no power to sell except that conferred by the decree of sale, and under this he acted.

2. JUDICIAL SALE—*Uncertainty as to Land or Price—Case in Judgment.* A purchaser at a judicial sale who offers to pay the costs of the suit and the commissions of the commissioner of sale as a part of the purchase price of the land purchased by him cannot es- cape liability for his purchase on account of the uncertainty of the amount he is to pay. The clerk can readily tax the cost of suit, and the commissions are fixed by law and easily calculated. The law regards that as certain which can be made certain. Nor can he claim uncertainty as to the land purchased when there is a plat describing it filed in the record.

3. EQUITY—*Judicial Sale—Failure to Comply with Terms of Sale— Remedy.*—Upon the failure of a purchaser at a judicial sale to

comply with the terms of sale a rule to show cause why the land purchased by him should not be resold at his costs and risk is the proper and usual proceeding to compel him to comply.

Appeal from a decree in chancery of the Circuit Court of Gloucester county in the suit of *Jones, Trustee,* v. *Ash and Others,* in which the appellant became the purchaser of a parcel of land. From a decree compelling the appellant to comply with the terms of a judicial sale he appeals.

*Affirmed.*

The opinion states the case.

*H. I. Lewis* and *S. S. P. Patteson,* for the appellant.

*Jones & Woodward, J. N. Stubs* and *J. W. Friend,* for the appellees.

BUCHANAN, J., delivered the opinion of the Court.

This appeal is from a decree entered in the cause July 6, 1905, against the appellant, upon a rule to show cause why the land purchased by him should not be resold at his risk and cost for failure to comply with the terms of sale. The suit in which the decree was entered was instituted by Maryus Jones, substituted trustee in certain deeds of trust, by which the trustee held the lands embraced therein for the benefit of the widow of William H. Ashe during her life, and which at her death passed to his children, some of whom were infants. The object of the suit, which was brought under the provisions of section 2616 of the Code, was to authorize the sale of a portion of the trust lands.

The complainant, after making the allegations required by section 2616, in his bill alleged further that he was offered by one M. C. Richardson and the Seaboard Real Estate Company, a corporation, $5,000 for thirty acres of the land, and in addition they were to pay the cost of this proceeding and the trustee's

commissions; that he had no power of sale under two of the trust deeds; and prayed that the court would direct the said sale to the aforesaid purchasers to be consummated, and for general relief.

Upon the hearing of the cause, it being clearly shown in the opinion of the court "that the interest of the said infants will be promoted by a sale of the thirty (30) acres of land in the bill and proceedings mentioned, at the price of five thousand dollars ($5,000.00), the purchasers to pay all the costs of this suit and expenses of sale, including fee of counsel and commissions of the trustee, and that the rights of no person will be violated by such sale, it is adjudged, ordered and decreed that the substituted trustee, Maryus Jones, do make sale of the said thirty (30) acres of land, which do not include any land upon which buildings are standing, for the price of five thousand dollars ($5,000.00), to M. C. Richardson and the Seaboard Real Estate Company, a corporation created by and existing under the laws of the state of Virginia, upon the following terms: One thousand dollars ($1,000.00) in cash, the balance in two equal installments, upon a credit of three and six months, the purchasers executing their notes for the deferred payments and bearing interest from date, and a lien upon the said land shall be retained to secure the payment of the said deferred payments. Upon the payment of the said cash payment the said substituted trustee, who is also appointed a special commissioner for the purpose, shall convey the land to the said purchasers, or any person whom they or either of them may direct, retaining a lien on the said land for the unpaid purchase money. And the purchasers shall pay the costs of this suit and the expenses of the said sale; and the purchasers are at liberty to anticipate the payment of the deferred payments."

That decree, which was made in vacation by consent of parties, was dated May 15, 1903, and entered in the order book by the clerk of the court on the 23d day of that month.

On the 9th day of October following, Jones, the substituted

trustee and special commissioner, reported to the court that in obedience to the decree of the 15th day of May, 1903, he made sale of the land in the bill and proceedings mentioned to one M. C. Richardson and the Seaboard Real Estate Company for the sum of $5,000, the purchasers agreeing to pay all the costs of this suit and expenses of sale, including fee of counsel and commissions of trustee; "that the sale was made on the 15th day of May, 1903, pursuant to an agreement between the said purchasers and the undersigned, which said agreement was made prior to the institution of this suit, subject to the approval of the court; that each of the said purchasers agreed to the terms set out in the said decree, but that afterwards they desired to have the land partitioned between themselves and each to take his share, viz: fifteen (15) acres, pursuant to the decree entered in the said cause on the 2d day of July, 1903; that said purchasers did enter on the said land with R. A. Folks, the surveyor of Gloucester county, and partitioned the said land, each taking fifteen acres, as is shown by a copy of a plat thereof made by the said R. A. Folkes, surveyor, as aforesaid, and filed in this cause"; but that both purchasers had failed to comply with the terms of the decree of sale. The special commissioner recommended that steps should be taken to compel the purchasers to comply with the terms of sale. That report, by a decree entered October 15, 1903, was approved and confirmed, the sales therein reported decreed to be binding on all the parties, and a rule awarded against each of the purchasers, returnable to the first day of the next term, to show cause why the land purchased by each should not be resold at his risk and costs for his failure to comply with the terms of sale.

At the March term, 1904, a decree was entered, directing said lands to be resold, but on the next day that decree was set aside as to the appellant upon his petition, and leave given him to file his answer. In his answer he stated that he had, as agent of parties in New York and West Point, made an offer to purchase the land, but it appearing that the title was in such con-

dition that the parties could not sell, no contract of sale was made, there being no one authorized to sell or to whom an offer of purchase could be made; that the substituted trustee "undertook to have the court complete the title so that the property could be purchased, and that this suit was instituted for that purpose, but no decree for sale was made until May 15, 1903, and that decree was not entered until the 23d of that month; that Jones, the substituted trustee, was authorized to make sale of the thirty acres of land, but as he had no authority to sell except as special commissioner, he could not take any step in the matter except in accordance with the terms of the decree, and that he had not made any legal or binding contract of sale with the appellant; that he had no authority to collect any purchase money under the decree entered May 23, 1903, nor any legal authority to make a contract of sale; that the substituted trustee was fully aware that all that the appellant did in the premises was done for others for whom he was acting and who had employed counsel to look into the title of the property; and denied that he had ever entered into any contract for the purchase of the land for himself or other persons, and prayed that the rule against him should be dismissed. His answer was replied to, but he took no proof to sustain its allegations. Affidavits were filed by the complainant, which sustained the statement of the commissoner in his report that he had sold the land pursuant to the decree of sale, and showed that the appellant and the Seaboard Real Estate Company had not only partitioned the land between them, but had taken possession of their respective parcels and that the appellant had written to the special commissioner, after the land had been partitioned and before his report of sale was made, not to fail when he made the deed to the land to provide for a thirty-foot unobstructed right of way to the main county road, and that they had the purchase money and were tired of holding it.

In this condition of the record the cause was submitted to the court at the July term, 1905, and the decree appealed from

entered, in which the court held that the sale made and reported by Jones as substituted trustee and special commissioner was a judicial sale; that the appellant had purchased the fifteen acres of land, but had not complied with the terms of sale, and directed a resale thereof unless he or some one for him should within sixty days from the service of a copy of the decree upon him pay to the special commissioner $2,500, with interest thereon from May 15, 1903, or, at his option, pay to the special commissioner the shares of the adults, and secure the payment of the shares of the infants, and also pay to the special commissioner the costs of this proceeding, including commissions of the substituted trustee on the purchase price of the fifteen acres of land, and a fee of $50 to the counsel who instituted and conducted the suit.

The first error assigned, as we understand the petition, is that the court erred in holding that the sale reported by the substituted trustee and special commissioner was a judicial sale. To sustain this contention the cases of *Christian* v. *Cabell,* 22 Gratt. 32, and *McAllister* v. *Harmon,* 101 Va. 17, 42 S. E. 920, are cited.

In each of those cases the parties had entered into a written agreement for the sale and purchase of the property. In the first-named case the vendors were to procure the approval of the proper court to the contract of sale. "It is impossible," said Judge Staples, in discussing the question whether it was a judicial or private sale, "to regard this in any other light than a private contract of sale and purchase. The court was not asked or expected to make but to confirm a sale already made. Its aid was invoked to ratify what had already been done—to sanction terms already agreed upon. The vendors believed that they and the others in whose behalf they acted had a perfect title to the property, and they undertook with the aid of the court to convey such title."

In the second-named case the court neither made the sale, nor authorized the vendors to make it, and, under the pleadings in

the cause, had no power to sell one moiety of the subject-matter of the sale. The option agreement to sell did not purport to be a sale by the court, but was a sale by the vendors. Its validity was not made to depend and did not depend upon the court's confirmation.

In this case it is conceded by the appellant's pleadings, as well as alleged in the complainant's bill, that the substituted trustee did not have authority to sell; the suit was instituted for the purpose not of confirming a sale already made but of getting the court to make sale of the thirty acres of land to the appellant and his associate for the price which they had offered. Notwithstanding the denial of the appellant it is clear, not only from the special commissioner's report of sale, that the appellant did purchase the land from the special commissioner upon the terms prescribed by the decree of sale, but his conduct in uniting with the Seaboard Real Estate Company in partitioning the land, in taking possession of the portion allotted to or selected by him, in urging the commissioner to prepare the deed so as to give him a right of way to the public highway, and in informing the commissioner that they had the money to pay for the land and were tired of holding it, can be explained upon no other hypothesis than that he was a purchaser thereof. The fact that the sale was made privately and not at public auction does not make it any less a judicial sale.

Where a sale is made by a commissioner appointed to sell under a decree of a court having jurisdiction to sell the property, whether made publicly or privately, it only becomes a sale when confirmed by the court, and when confirmed it is a judicial sale. *Hess* v. *Raden,* 26 Gratt. 746; *McAllister* v. *Harmon, supra.*

The other assignments of error, or grounds relied on to show that the decree appealed from is erroneous, may be considered together and are as follows:

"Second. Because it cannot be ascertained from the record how much money petitioner was required to pay for the land.

"Third. Because it is not even clear what is the land which he purchased.

"Fourth. Because lacking in the necessary elements of certainty, such a contract will not be specifically enforced in equity."

The record clearly shows that the appellant purchased fifteen acres of land described in a plat filed in the record; that he was to pay $2,500 for it, with interest thereon from May 15, 1903, and also to pay one-half the costs of the suit, one-half of the commissions of the substituted trustee and special commissioner for making the sale, and fifty dollars—one-half of the fee of the attorney who instituted and prosecuted this suit. It is true that the court does not fix in dollars and cents the amount of the costs of the suit, nor the amount of the commissions on the sale; but the amount of the costs of the suit can be easily ascertained by having the clerk tax them in the manner prescribed by law. The commissions for the sale are fixed by law, and can be ascertained by a simple calculation. The law regards that as certain which can be made certain, and there would be no difficulty in specifically executing such a contract even if this were such a case as is insisted by the appellant.

The appellant having failed to comply with the terms of his purchase a rule to show cause why the property purchased by him should not be resold at his costs and risk was a proper proceeding, and the one usually adopted in this state to compel a purchaser at a judicial sale to comply with the terms of sale. *Clarkson* v. *Read,* 15 Gratt. 296; *Hurt* v. *Jones,* 75 Va. 341, 347; *Robertson* v. *Smith,* 94 Va. 250, 26 S. E. 579, 64 Am. St. Rep. 723, and cases cited.

We are of opinion that there is no error in the decree appealed from and that it must be affirmed.

*Affirmed.*