the shipping receipts in use by the defendant, as he says, "in case a regular claim has not been presented," etc., and the use of that language leads to the natural inference that a waiver of a "regular" or written claim was intended. The judgment should therefore be affirmed.

Judgment affirmed, with costs to the respondent. All concur.

---

(27 Misc. Rep. 482.)

### GODDARD et al. v. AMERICAN QUEEN et al.

(Supreme Court, Special Term, New York County. May, 1899.)

1. CONTRACTS—EXCLUSIVE RIGHTS—PUBLIC POLICY.

   A contract by the publishers of a magazine to advertise a certain skirt protector, to the exclusion of all others of a similar make, for the period of 18 months, is not invalid, as being in restraint of trade or against public policy.

2. SPECIFIC PERFORMANCE—WHEN DECREE DIFFICULT OF EXECUTION.

   Specific performance will not lie to enforce a contract for an exclusive right of advertising a stated class of goods in a monthly magazine for a period of 18 months, because of the difficulty attending the execution of a decree in such case.

3. INJUNCTION—WHEN INJURIOUS TO INNOCENT THIRD PARTY.

   One having a contract for the exclusive right of advertising a stated class of goods in a magazine cannot have such publication enjoined from publishing advertisements of the same class under contracts previously made with others, as this would inflict an injury upon parties innocent of any wrong.

4. EQUITY—JURISDICTION TO GRANT RELIEF IN DAMAGES.

   Where the plaintiff in an equitable action is not entitled to the relief prayed for in his petition, but should have damages for the wrong complained of, and a new action would probably be met by a plea of res adjudicata, a court of equity, having acquired jurisdiction, will retain control of the case for trial on the question of damages.

Action by Warren N. Goddard and others against the American Queen, Incorporated, and another, for specific performance of a contract for advertising in a magazine called "The American Queen" an article known as "Feder's Brush Skirt Protector," wherein it was agreed by the defendant not to publish, for the period of 18 months, any advertisements of skirt protectors or skirt bindings similar to Feder's Brush Skirt Protector. An injunction was also asked to restrain defendant, the American Queen, Incorporated, from publishing the advertisements of defendant the Stewart, Howe & May Company of a skirt binding and protector similar to that of the plaintiff, which it was alleged appeared in the issues of said magazine subsequent to said contract with plaintiffs, and were still being published in said paper, contrary to the terms of said contract with plaintiffs. It appeared from the evidence that, some time previous to the making of the contract with plaintiff, the American Queen, Incorporated, had contracted with the Stewart, Howe & May Company for advertising its goods, and that such contract had not yet been completed. The court denied the prayer of plaintiffs' petition for a specific performance of the contract in question, and refused to enjoin the publication of the advertisements of the Stewart, Howe & May Company, but re-

tained jurisdiction of the case to try the question of damages to which plaintiffs might be entitled should they elect to accept such relief.

Warren, Boothby & Warren, for plaintiffs.

Dayton & Swift, for defendant American Queen.

Edmund Wetmore, for defendant Stewart, Howe & May Co.

WERNER, J.　The dismissal of the complaint as to the defendant the Stewart, Howe & May Company entitles that defendant to costs. No attempt was made upon the trial to prove the allegations of the complaint charging said defendant with knowledge of and participation in the alleged wrongful acts of the other defendant.　The mere disclaimer of counsel for the plaintiffs of any intention to ask for a personal judgment against the defendant the Stewart, Howe & May Company was not sufficient to require or justify the withdrawal of counsel for said defendant from further active participation in the case.

As to the controversy between the plaintiffs and the defendant the American Queen, Incorporated, several interesting and perplexing questions arise.　The dispute as to the terms of the contract, and the understanding of the parties regarding the same, must be decided in favor of the plaintiffs.　The contract speaks for itself, and the letters of the defendant disclose its understanding of the terms of the contract.　During the period when said defendant was trying to induce the plaintiffs to consent to the publication of the "S. H. & M." advertisement, the former urged every argument and pretext in its favor, except the one upon which it now relies.　Neither of said letters contains any reference to Manager Kelly's alleged lack of authority to enter into the contract in suit for the defendant, nor to said Kelly's misunderstanding as to the terms of the contract.　It is quite plain that the only view in which said Kelly's conduct can be regarded as measurably consistent with good business morals and common honesty is that, at the time when he made the contract in suit with the defendant, he had forgotten that there was a contract in existence with the Stewart, Howe & May Company, under which the defendant might be called upon, and compelled, to publish an advertisement of their skirt binding, although it had not previously been called upon to do so.　As there is no evidence in the case disclosing the terms of the latter contract, except that which is given on behalf of defendant, or contained in its letters to plaintiffs, we will give the defendant the benefit of the most charitable view of its position that can be taken, and assume that its manager, Kelly, acted in good faith, and under a failure of recollection as to the "S., H. & M." contract.　Assuming, therefore, that the contract upon which the plaintiffs stand is one which the parties undertook to make, and did make, and one which Kelly, as the manager of the American Queen, Incorporated, was authorized to enter into, we are confronted by the interesting question whether the plaintiff is entitled to the relief which it asks herein.　The relief prayed for is twofold: (1) That the defendant the American Queen, Incorporated, be required to specifically perform its contract with the plaintiffs, upon condition that plaintiffs carry out the same

on their part.   (2) That both defendants be restrained from publish-
ing, inserting; or causing to be inserted, in the paper published by the
defendant the American Queen, Incorporated, the advertisement of
the defendant, the Stewart, Howe & May Company, or any other per-
sons, firms, or corporations, of any skirt protectors or bindings with
an edge similar to or resembling the edge of Feder's Brush Skirt Pro-
tector, or in any manner circulating or distributing the said paper
containing any such advertisement, except the advertisement of the
plaintiffs from September 1, 1898, to and including the month of
March, 1900.

Can the contract between the plaintiffs and the defendant the
American Queen, Incorporated, be specifically enforced?   We will
consider this question in the first instance without reference to the
rights of the defendant the Stewart, Howe & May Company, reserving
the latter branch of the case for separate discussion further on.   That
the contract in suit is one which the parties had a right to make,
that it violates no rule of public policy, and that it is not in restraint
of trade, seems too obvious for serious discussion.   The plaintiffs
have the right to advertise where, when, and as they please.   The
defendant the American Queen, Incorporated, has the right to sell all
or any part of its advertising space to one or more advertisers, to the
exclusion of others.   Such a transaction involves a simple business
contract, in which the general public have no interest.   The following
authorities amply illustrate the trend of judicial decisions in cases in-
volving questions similar to the one before us:   Greenh. Pub. Pol.
681;   Good v. Daland, 121 N. Y. 1, 24 N. E. 15;   Matthews v. Associated
Press, 136 N. Y. 333, 32 N. E. 981;   Leslie v. Lorillard, 110 N. Y.
519, 18 N. E. 363;   Match Co. v. Roeber, 106 N. Y. 473, 13 N. E. 419.
We cannot enter upon a discussion of the authorities cited by coun-
sel for the defendants upon this branch of the case, without tran-
scending the rules of reasonable brevity; nor is it necessary, in view
of the result which we shall reach in this discussion.

But it does not follow, because the contract in suit is valid, and
the plaintiffs may have suffered a substantial injury, for which there
is no adequate redress at law, that a court of equity can or will
enforce specific performance.   There are many cases in which this
form of relief is impossible, or so impracticable as to be substantially
impossible.   This contract in suit seems to present such a case.   It
requires the defendant the American Queen, Incorporated, to insert
in its paper, and to publish monthly for 18 months, from September,
1898, the plaintiffs' advertisement, to the exclusion of the defendant
and of others advertising similar wares.   Even if it were possible
or proper to prevent the publication of the "S., H. & M." advertise-
ment during that period, the court could not assume the burden of
superintending the specific performance of the contract with the
plaintiffs.   That would involve continuous and detailed labor and
supervision, of which the decree, "couched in the precise terms of the
contract itself, would be but the beginning of the judicial work."
Fargo v. Railroad Co., 3 Misc. Rep. 205, 23 N. Y. Supp. 360, and other
cases cited in Standard Fashion Co. v. Siegel-Cooper Co., 30 App. Div.
564, 52 N. Y. Supp. 433.   The latter case is relied upon by plaintiffs'

counsel as an authority upholding the right of specific performance contended for herein.   As we read that case, both the court of appeals and the appellate division concur in the doctrine that:

"Contracts which require the performance of varied and continuous acts, or the exercise of special skill, taste, and judgment, will not, as a general rule, be enforced by courts of equity, because the execution of the decree would require such constant superintendence as to make judicial control a matter of extreme difficulty."   Standard Fashion Co. v. Siegel-Cooper Co., 157 N. Y. 66, 51 N. E. 408.

The recognized exception to this rule is found in cases arising upon contracts relating to the management and control of railroads and other quasi public corporations, and then only when the public good to be subserved by specific performance outweighs the inconvenience of the courts in attempting to enforce their judgments.   All that was really decided in that case was that, when a complaint sets forth a good cause of action in equity, it is not demurrable simply because the court may ultimately refuse to exercise its sound discretion in granting the relief prayed for.

But it is contended that, even if the plaintiffs cannot have specific performance of their contract, they are at least entitled to an injunction restraining the culpable defendant from profiting by its own wrong.   There would be no difficulty in enforcing the negative covenant of the contract in suit by injunction, if the allegations of the complaint had been sustained by proof at the trial.   But the allegation "that the defendant the Stewart, Howe & May Company knew of the agreement entered into between these plaintiffs and the defendant the American Queen, Incorporated, and that the said defendant the Stewart, Howe & May Company induced the American Queen, Incorporated, to break its said agreement with these plaintiffs, and promised to said defendant the American Queen, Incorporated, to save it harmless against any recovery that might be obtained against said defendant the American Queen, Incorporated, by the plaintiffs, by reason of the breaking of said agreement," is utterly unsupported by evidence.   On the contrary, it appears that the Stewart, Howe & May Company had a contract with the American Queen, Incorporated, which antedated the making of the contract in suit.   Although the terms of that contract do not appear, the only inference that can be drawn from the evidence on that subject is that it was broad enough to require the publication of the "S., H. & M." advertisement which appeared in the American Queen subsequent to the date of the contract with the plaintiffs.   If, as we have said, there had been evidence to sustain the claim that the Stewart, Howe & May Company was a party to, and participated in, the wrong which was perpetrated upon the plaintiffs, the court would issue an injunction restraining the continuance of the wrong, even though it would not undertake to enforce the specific performance of the contract with the plaintiffs. Standard Am. Pub. Co. v. Methodist Book Concern, 33 App. Div. 409, 54 N. Y. Supp. 55; Singer Sewing-Machine Co. v. Union Buttonhole & Embroidery Co., 1 Holmes, 253, Fed. Cas. No. 12,904; Standard Fashion Co. v. Siegel-Cooper Co., 157 N. Y. 66, 51 N. E. 408, and cases there cited.   The defendant the Stewart, Howe & May Company

is an innocent party to a valid contract, which antedates that of the plaintiffs, and which must be broken in order to give the plaintiffs the relief which they ask. In the last analysis, it is clear that neither form of relief prayed for by the plaintiffs can be granted, without inflicting an injury upon an unoffending third party. To do this would be to build equity upon iniquity. Here lies the distinction between the case at bar and the cases above cited, in which the continuance of a wrongful act was restrained, although the courts were powerless to enforce specific performance. Shall, then, the plaintiffs be sent out of court remediless? This seems inevitable, unless it can recover some measure of compensation in damages. The court having obtained jurisdiction of the action, it could award to the plaintiffs such damages as they may be entitled to, if there were evidence upon which to base the same. But there is no such evidence. It may be suggested that the case is one in which no satisfactory rule of damages can be applied. This question is not free from perplexity. But we apprehend that the difficulty is not insurmountable. The case of Wakeman v. Manufacturing Co., 101 N. Y. 205, 4 N. E. 264, is a very instructive one upon this subject. There the broad and wholesome rule was laid down that:

"A person violating a contract should not be permitted entirely to escape liability because the amount of damage he has caused is uncertain. * * * The rule that damages which are contingent and uncertain cannot be recovered embraces only such as are not the certain result of the breach, not such as are the certain result, but uncertain in amount."

In view of the probability that the commencement of a new action at law by the plaintiffs would be met by a plea of res adjudicata on the part of the defendant the American Queen, Incorporated, it seems the plain duty of the court to retain control of the case for the trial and decision of the question of damages, if the plaintiffs so elect. We therefore arrive at the following conclusion: That the complaint is dismissed as to the defendant the Stewart, Howe & May Company, with costs to said defendant. The complaint is dismissed as to the defendant the American Queen, Incorporated, without costs, unless the plaintiffs shall within 15 days serve notice of election upon said defendant, or its attorneys of record, that the plaintiffs propose to try said question of damages, in which event the following questions are directed to be tried by jury: First. Have the plaintiffs sustained damages by reason of defendant's breach of the contract of July, 1898, between it and the plaintiffs? Second. What is the amount of such damages? In case of plaintiffs' election to so try said issue, the cause shall be placed upon the appropriate trial calendar, and after the trial and decision thereof the cause shall be submitted to the court for its final decision thereon. In the event of plaintiffs' failure to elect to try said issue as aforesaid, findings in accordance with the foregoing views may be submitted to the court. Ordered accordingly.