Argued December 8, 1925, reversed January 5, 1926.

# OREGON GROWERS' CO–OPERATIVE ASSO-CIATION *v.* ERNEST D. RIDDLE.

(241 Pac. 1011.)

**Specific Performance—Contract by Grower to Sell Products Exclusively to Co-operative Marketing Association Held not to Lack Mutuality of Remedy.**

1. Agreement by co-operative marketing association to buy, and by grower to sell to association exclusively, all of specified product on certain acreage grown during certain period, does not lack mutuality of remedy, because duties resting on association are in nature of personal services which could not be specifically enforced by grower, and hence association may specifically enforce agreement.

**Specific Performance—Relief Held Subject to Affirmative Defenses.**

2. Under marketing agreement by grower to sell products to marketing association exclusively, right of association to specific performance is subject to any affirmative defenses which grower may have.

**Specific Performance—Suit to Specifically Enforce Contract to Sell Fruit not Dismissed Though Time for Delivery has Expired.**

3. Suit by marketing association under Section 6954, Or. L., as amended by Laws of 1921, page 486, to specifically enforce contract to sell fruit to association, providing for liquidated damages in case of breach of contract as authorized by Section 6954, will not be dismissed on demurrer to petition, although time for delivery of fruit has expired, since, when a court of equity has acquired jurisdiction over some portion of controversy, the whole issue will be decided and complete relief awarded though rights of parties are strictly legal and final remedy may be granted by court of law.

**Equity—Equity may Grant Relief Obtainable at Law Where Equitable Relief Found Impracticable.**

4. Where plaintiff establishes his equity but equitable relief is found impracticable, a court of equity will grant compensation in money ordinarily obtainable at law.

---

1. Specific performance, necessity of and what constitutes mutuality of remedy, see note in 27 Am. St. Rep. 173. See, also, 25 R. C. L. 233.

4. Damages or compensation as allowable on denial of specific performance, see note in Ann. Cas. 1912A, 806. See, also, 10 R. C. L. 372.

Equity—Equitable Rights must be Both Averred and Proved Before Purely Legal Rights Determined by Court of Equity.

5. Equitable rights must be both averred and proved before purely legal rights will be determined by court of equity.

Agriculture, 2 C. J., p. 998, n. 31 New.
Equity, 21 C. J., p. 138, n. 28, p. 141, n. 57, p. 143, n. 69, 74, p. 145, n. 86, 87, p. 146, n. 88, 89.
Injunction, 32 C. J., p. 195, n. 37.
Specific Performance, 36 Cyc., p. 581, n. 48, p. 622, n. 19, p. 630, n. 47.

From Douglas: James W. Hamilton, Judge.

Department 2.

On November 21, 1919, defendant executed one of plaintiff's standard form of marketing agreements. By the terms of this contract, the association agrees to buy and the grower agrees to sell and deliver to the association, "all of the agricultural or horticultural products, of the varieties specified below, grown by or for him, or acquired by or for him at any place in Oregon, during the years 1920, 1921, 1922, 1923 and 1924, that he intends to sell or market or consign, or deliver, directly or indirectly for sale or marketing or consignment to any person or corporation whatsoever." Below the signature of the parties to the contract appear the following notations:

"Growers' present acreage in Oregon of products subject to this contract:

"15 acres of prunes (b) located at Riddle, Oregon.
"Schedule of Liquidated Damages.
"$15.00 per green ton of canning fruits.
5.00 per green ton of drying or canning vegetables.
15.00 per green ton of drying fruits.
10.00 per ton of shipping or fresh vegetables.
.50 or proportionately per box of shipping fruits.
.02 per pound of all cherries.
.02 per green pound of berries.
.50 or proportionately per crate of shipping berries.
.05 per pound of nuts."

A copy of the agreement is set forth *verbatim* in the abstract of record. A copy of this form of agreement is set out *in haec verba* in the opinion in the case of *Or. Growers' Co-op. Assn.* v. *Lentz et al.*, 107 Or. 561 (212 Pac. 811), commencing at page 566. The only difference in the contract in that case and the present case being as to date and the name of the grower signed thereto, and the notation of the acreage at the end of the agreement, which describes a certain number of acres of loganberries.

During the year 1921, the defendant grower produced prunes on the fifteen acres of land mentioned in the foregoing notation, but sold and delivered them to persons other than plaintiff herein. In 1922 defendant again produced prunes on the same 15 acres of land, but at the time when the prunes were ready to be picked and marketed, defendant informed plaintiff that he refused to deliver his prunes, or any part thereof, to plaintiff. On September 15, 1922, plaintiff instituted this suit to compel specific performance of the above-mentioned contract, to obtain an injunction against the delivery of prunes to anyone other than to plaintiff, and for accounting as to deliveries made in violation of the contract, the necessary facts being set forth in plaintiff's complaint with a copy of defendant's marketing agreement attached thereto.

To this complaint defendant interposed a general demurrer, the contention being, that on the face of the complaint equity had no jurisdiction of the subject matter therein contained, and that the complaint did not state facts sufficient to constitute a cause of suit against defendant. On January 11, 1922, an order was entered sustaining the demurrer. Plaintiff failed to further plead and on January 23, 1923, an order

was entered dismissing plaintiff's suit. Plaintiff appeals.

Prior to the filing of its complaint herein, this plaintiff had brought suit in the Circuit Court for Marion County, Oregon, against August Lentz, also a member of the plaintiff association, to compel specific performance of his marketing agreement and to obtain an injunction against delivery of his loganberries to anyone other than to plaintiff and for accounting as to deliveries made in violation of the contract.

The contract therein sued upon, as we have stated, was identical in terms with that in the instant case, except that it referred to loganberries instead of prunes. The complaint therein filed was practically a duplicate of that in the instant case, and the relief therein sought was the same as that prayed for in this case. The Lentz case went to trial on its merits and on August 31, 1922, a decree was entered enjoining and restraining August Lentz and his codefendant, Benjamin Lentz, from a delivery of loganberries grown upon the land mentioned in the marketing agreement to any person other than the association, until January 1, 1925, and for attorney's fees and costs.

The decree also provided that if delivery was not made to the association, the association should then recover from August Lentz liquidated damages in the amount set forth in the contract.

Thereafter August Lentz and Benjamin Lentz prosecuted an appeal to this court and on February 13, 1923, a short time after the suit in the instant case was dismissed, this court handed down its opinion affirming in all respects the decree of the Circuit Court for Marion County.          REVERSED.

For appellant there was a brief over the names of *Messrs. Dey, Hampson & Nelson, Mr. C. J. Young,* and *Messrs. Rice & Orcutt,* with oral arguments by *Mr. H. F. Cabell* and *Mr. Alfred A. Hampson.*

For respondent there was a brief over the name of *Mr. George Neuner, Jr.,* with an oral argument by *Mr. B. L. Eddy.*

BEAN, J.—1. The decision of this court, written by Mr. Justice RAND, in affirming the injunctive decree granted by the Circuit Court for Marion County, in the case of the *Oregon Growers' Co-op. Assn. v. Lentz, supra,* necessarily held that the complaint in that suit, which is substantially like the one in the present suit, is not demurrable. In the Lentz case, at page 587, we find recorded the following:

"As the contract in question is not oppressive, unjust or illegal, and its enforcement by mandatory injunction restraining the defendant from selling the products contracted for, to anyone except the plaintiff, will work no injustice or hardship upon the defendant, and as plaintiff is clearly entitled to the relief granted, the decree of the circuit court is affirmed."

It is contended in the present case, as it was in the Lentz case, that the marketing agreement lacked mutuality of remedy, that is, the grower could not have specific performance against the association because the duties rested upon the association were in the nature of personal services and, therefore, it was inequitable to grant specific performance at the suit of the association.

This question is fully covered in the opinion in the Lentz case at page 583 of the Report, which reads as follows:

. "This contract, however, could be and was properly enforced by the mandatory injunction of the circuit court which enjoined the defendant from selling any of the loganberries contracted for to anyone except the plaintiff. The defendant was thus indirectly or negatively required to perform the obligation of his contract, which, in express terms binds him to sell and deliver to the plaintiff all of the loganberries, grown by or for him upon the nineteen acres of land, which he intends to sell or market up to January 1, 1925. This relief can be enjoyed by the plaintiff only so long as the plaintiff itself performs all of the acts which by the contract, it has agreed to do. The case falls within the rule that 'where a person is ordered by injunction to perform a negative covenant of that kind, the whole benefit of the injunction is conditioned upon the plaintiff performing his part of the agreement, and the moment he fails to do any of the acts which he engaged to do and which were the consideration for the negative covenant, the injunction would be dissolved.' *Stocker* v. *Wedderburn*, 3 K. & J. 393, 404. See, also, *Semidey* v. *Central Aguirre Co.*, 239 Fed. 610 (152 C. C. A. 444). Should the plaintiff itself fail to substantially perform the contract according to its terms, the defendant will thereupon be released from his agreement and upon proper application to the court below the injunction will be dissolved."

Therefore, the main questions involved herein, having been considered and adjudicated in the case mentioned, but little remains to be said in the present case.

2. It is not contended that the right of the association to equitable relief exists irrespective of any affirmative defenses which the grower may have. In the Lentz case jurisdiction was specifically reserved to the Circuit Court to dissolve the injunction in a supplemental proceeding, in case it should be shown that the association failed to perform its part of the agree-

ment. This provision should be kept in mind and enforced in the present case if circumstances require its application. Recent decisions of other courts have sustained the validity of co-operative marketing agreements similar to the one in question in the present case, and have held that the association was entitled in equity to the enforcement of the marketing agreement. See *Tobacco Growers' Co-op. Assn.* v. *Jones,* 185 N. C. 265 (117 S. E. 174, 33 A. L. R. 231); *Brown* v. *Staple Cotton Co-op. Assn.,* 132 Miss. 859 (96 South. 849); *Kansas Wheat Growers' Assn.* v. *Schulte,* 113 Kan. 672 (216 Pac. 311).

. 3. The legislature of this state, in order to foster and encourage co-operative associations, by Chapter 260, Gen. Laws of Oregon 1921, p. 486, amended the law relating to such association. Section 6954, Or. L., as so amended, provides in part thus:

"The by-laws and marketing contract may fix, as liquidated damages, specific sums to be paid by the member to the association upon the breach by him of any provision of the marketing contract regarding the sale or delivery or withholding products; and any such provisions shall be valid and enforceable in the courts of this state.

"In the event of any such breach or threatened breach of such marketing contract by a member, the association shall be entitled to an injunction to prevent the further breach of the contract, and to a decree of specific performance thereof. Pending the adjudication of such suit, the association shall be entitled in a proper case to a temporary restraining order or preliminary injunction against the member."

It is contended by defendant that as the time for delivery of fruit under the contract has expired, that an injunction at this time would be useless; that plain-

tiff's remedy, if he has any, would be in an action at law, and that the suit should be dismissed.

4. When a court of equity has acquired jurisdiction over some portion of a controversy, it will proceed to decide the whole issue and award complete relief, though the rights of the parties are strictly legal and the final remedy is of a kind that may be granted by a court at law: *Shultz* v. *Shively,* 72 Or. 450 (143 Pac. 1115) ; *Templeton* v. *Bockler,* 73 Or. 494 (144 Pac. 405) ; *O. W. R. & N. Co.* v. *Reed,* 87 Or. 398 (169 Pac. 342, 170 Pac. 300) ; *Phez Co.* v. *Salem Fruit Union,* 103 Or. 514, 545 (201 Pac. 222, 205 Pac. 970, 25 A. L. R. 1090). There are circumstances under which a court of equity will grant compensation in money, ordinarily obtainable at law. One of these cases is where the plaintiff established his equity, but equitable relief is found impracticable: 21 C. J. 143, § 123. The general rule as to the test of jurisdiction of a court of equity is stated thus in 21 C. J., page 145, section 124(c) :

*"Where Equity Fails After Suit Brought.* The test of the jurisdiction of a court of equity is whether facts exist at the time of the commencement of the action sufficient to confer jurisdiction on the court. If plaintiff is then entitled to the aid of equity the jurisdiction will not be defeated by subsequent events which render equitable relief unnecessary or improper. This rule is applicable, not only where the relief sought is prevented by act of the defendant, but also where the change of circumstances arises from lapse of time, rendering the specific relief unsuitable or inequitable. * * *"

5. Equitable rights must be both averred and proved before purely legal rights will be determined by a court of equity. We are to determine at this stage of the case whether jurisdiction should be re-

tained for the purpose of assessing damages after the cause is tried in case issues shall be raised, only so far as necessary in connection with the ruling upon the demurrer; or, in other words, to determine whether or not the suit should now be dismissed on account of the lapse of time or change of circumstances.

It follows that the demurrer in this suit should be overruled. Therefore, the cause will be remanded to the Circuit Court for that purpose and for such further proceedings as may be deemed proper. Following the precedent of the Lentz case, no costs will be allowed either party.                    REVERSED.

McBRIDE, C. J., and BROWN and BELT, JJ., concur.