Argued November 20, affirmed December 3, 1952, petition for
rehearing denied February 4, 1953

## WALKER *v.* MACKEY ET AL.

251 P. 2d 118
253 P. 2d 280

*George P. Winslow,* of Tillamook, argued the cause and filed a brief for appellant.

*H. T. Botts,* of Tillamook, argued the cause and filed a brief for respondent.

Before BRAND, Chief Justice, and ROSSMAN, LUSK, LATOURETTE, WARNER and TOOZE, Justices.

TOOZE, J.

This is a suit for specific performance of an oral contract for the sale and purchase of land, brought

by Robert Walker, as plaintiff, against Ena Fay Mackey, and E. John Mackey, her husband, and Oregon State Highway Commission, as defendants. The suit was dismissed as to the Oregon State Highway Commission. A decree was entered in favor of plaintiff against defendant Ena Fay Mackey, and the court awarded plaintiff judgment against said defendant in the sum of $2,547, with costs. Defendant Ena Fay Mackey appeals.

At the time of the negotiations between plaintiff and defendant Ena Fay Mackey as hereafter mentioned, said defendant was the owner and in possession of the southeast quarter of the northeast quarter of section 20, township 2 south of range 9 west, of the Willamette meridian, in Tillamook county, Oregon, and also of a parcel of land in the southwest quarter of the northwest quarter of section 21, in said township and range.

During the spring of 1946, defendant Ena Fay Mackey and plaintiff entered into an oral agreement for the sale and purchase of two acres of land located in the southeast corner of the tract of land owned by defendant in section 20, township 2 south of range 9 west of the Willamette meridian. It was agreed between the parties that each of the two acres was to be square in shape, one acre lying west of and adjoining the other. The price agreed upon was $1,000.

The parties also agreed that the description of the land so sold was to commence at an established government survey corner, which is marked by a stone, at the southeast corner, this being the common one-quarter corner for sections 20 and 21, in said township and range. Defendant pointed out this corner to plaintiff and directed that he commence his measurements from there. By the use of a table of measurements, plaintiff

and defendant roughly figured the dimensions of the land necessary to comprise the two acres.

Immediately thereafter, plaintiff procured Mr. Mackey's tapeline, and with the assistance of the small son of defendant proceeded to make the measurements. Starting at the corner stone, he measured 208.9 feet directly north, setting a stake at the end of each 50-foot measurement; then he measured west for a total distance of 400 "and some odd feet", also setting a stake at each 50-foot measurement; he then measured south and then east back to the place of beginning. He set a stake at each corner, except perhaps the starting point. Plaintiff does not claim that his measurements were exactly accurate, but states that defendant Ena Fay Mackey had agreed to have the tract surveyed.

In the summer of 1946, plaintiff took possession of the two-acre tract, built a barn thereon, and erected a fence for a corral in which to keep his horses. In 1947, at the request of defendant E. John Mackey, plaintiff permitted said defendant to cut some hay from the land. Also, in 1947, plaintiff constructed a fence around the greater portion of the two acres. Defendant Ena Fay Mackey purchased some of the posts used for this fence.

In 1948, plaintiff purchased materials, hired a carpenter, and commenced the construction of a dwelling house on the premises. About that time defendant Ena Fay Mackey was negotiating with a representative of the Oregon State Highway Commission for the sale of a part of the land for highway purposes. The land was necessary to the relocation of state highway No. 101. On August 14, 1948, defendants Ena Fay Mackey and E. John Mackey conveyed to the Highway Commission a tract of land for highway purposes. A

portion of the land described and so conveyed included a part of the two-acre tract occupied by plaintiff.

It was about this time that defendant E. John Mackey told the carpenter employed by plaintiff, who was then working on the new house, that he "didn't want Bob to go ahead and spend a lot of money, do a lot of work, you know, on that place and we didn't have it settled." This was the first objection either defendant ever made to plaintiff's possession and use of the premises. It was not until November 22, 1948, and long after the sale to the Highway Commission, that the first formal objection was made. That was in a letter written to plaintiff by the attorney for defendant Ena Fay Mackey, which reads as follows:

"Robert Walker

Tillamook, Oregon

"Dear Sir:

"Mrs. Ena Macky [sic] has recently consulted me in reference to your building program upon her property.

"Mrs. Macky [sic] tells me that there was some oral talk about you buying two acres of land from her, but nothing has ever been put in writing. She further tells me that the buildings which you have recently constructed are not upon the property that she understood you desired to purchase; that she told you at least twice not to go ahead with your building program until the property which you desired was agreed upon. I believe you have paid several payments to Mrs. Macky [sic], but according to her understanding your house recently constructed is not upon any property that Mrs. Macky [sic] had any intention of conveying to you.

"Under all the circumstances, there being no binding contract at all, Mrs. Macky [sic] is tendering to you all money which she has received and you

are authorized to remove any and all buildings which you have placed upon her property within thirty (30) days from this date.

"After thirty days from this date you are notified not to trespass upon Mrs. Macky's [sic] property in any manner without you have her written consent."

■ It was defendants' contention on the trial that the two acres plaintiff was to purchase consisted of one acre of upland and one acre of lowland or swamp, and they disputed plaintiff's contention that each acre was to be in the form of a square. However, the weight of the evidence supports plaintiff's contention with respect to that matter. The dwelling house was constructed upon the land plaintiff contracted to purchase.

It was conclusively established on the trial that the State Highway Commission was an innocent purchaser for value of all the land it purchased, including that part taken off the two-acre tract sold to plaintiff. For that reason, the suit was dismissed as to the Highway Commission.

The evidence discloses that in addition to making the improvements in question, plaintiff actually paid defendant Ena Fay Mackey a total sum of $425 on the purchase price. As typical of the receipts issued by said defendant when plaintiff made payments, we quote the following:

"Money Receipt No. 1.                    "Jan 20, 1947

"Received from Robert E. Walker $275.00 and /100 DOLLARS for Payment on land.

"Amount Due

Paid $275.00

Balance $725.00

"Received by [Sgd.] Mrs. E. J. Mackey."

The last payment in the sum of $50, evidenced by a similar receipt, was made August 21, 1947, or one week following the conveyance to the Highway Commission.

The trial court found that plaintiff was entitled to have the oral contract specifically performed, but because of the fact that a part of the land had been deeded to the State Highway Commission, complete performance could not be had.

Thereupon, the court indicated that it would retain jurisdiction in equity and award plaintiff judgment for the reasonable value of the improvements placed on the land upon the faith of the oral agreement and for a return of the $425 paid on the purchase price. Defendant Ena Fay Mackey filed written objections to the court proceeding further in equity as indicated and demanded that the cause be remanded to the law side of the court where jury trial might be had. The objections were overruled, and the court entered the following decree (omitting formal parts):

"This matter came on for hearing on August 1, 1951, plaintiff appearing in person and by H. T. Botts, his attorney, defendants Mackey appearing in person and by George P. Winslow, their attorney and, the Oregon State Highway Commission and the Commissioners thereof appearing by Fred A. Miller and John R. McColloch, Assistant Counsel for the State Highway Commission and the Commissioners, and the parties announcing themselves as ready for trial, opening statements were made by counsel and testimony was offered by plaintiff and defendants Mackey, and the hearing was continued until August 2, 1951, whereupon the parties rested, and arguments for counsel were heard and the matter was taken up under advisement by the Court.

"And the court now being advised in the premises finds that the plaintiff has clearly established by a preponderance of the evidence that

the defendant, Ena Fay Mackey, orally contracted to sell to Robert Walker, in 1946 or 1947, two acres of land situated along the south boundary line of said defendant's property approximately bounded by the fence constructed by the plaintiff, Robert Walker, for the sum of $1,000.00, payable monthly at the rate of $50.00 per month; that the contract became enforceable by reason of the plaintiff making valuable improvements to the premises in constructing a house, barn and fencing, and paying $425.00 on the purchase price; that the defendant, E. John Mackey, husband of the defendant, Ena Fay Mackey, by his actions acquiesced and thereby became a party to the contract; that said contract cannot be specifically enforced by reason of the fact that the State Highway Commission, as a bona fide purchaser for value, acquired a right of way across a portion of the land covered by said contract and that plaintiff is therefore entitled to a decree compensating him to the extent of the improvements which he placed on the premises, which enhanced the value of the land, which value the court fixes at $2,122.00, plus the sum of $425.00 paid by plaintiff on said purchase price.

"And the court having heretofore signed an order dismissing this cause as to the defendants the Oregon State Highway Commission and its commissioners;

"And that the objection of the defendant, Ena Fay Mackey, throughout the trial of this cause, and never waived, that this court has no jurisdiction, sitting in equity, to award plaintiff solely a money judgment and that this cause should be transferred to the law side of this court so that said defendant could have a jury trial, be and the same is hereby overruled;

"THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that plaintiff have and recover from the defendant, Ena Fay Mackey, $2,547.00, together with his costs and disbursements

of this cause, taxed and allowed at $58.16, and the Clerk of the Court shall pay over to plaintiff to apply thereon the $425.00 tendered into court by said defendant for plaintiff.''

There is an abundance of testimony in the record to establish the reasonable value of the improvements placed on the land by plaintiff as fixed by the court in its decree, and, of course, there was no dispute between the parties as to the total payment by plaintiff of $425.00 on the purchase price.

Upon this appeal defendant again urges the lack of authority on the part of the trial court to retain jurisdiction in equity and award a money judgment as it did.

We are today handing down an opinion in the case of *Powell et al. v. Sheets et al.,* in which we discuss many of the principles of law involved in the instant litigation. We shall not repeat that discussion. In that case we held that the trial court lacked jurisdiction in equity to award a judgment for money against defendants. But the basis of our decision in that case was the entire lack of evidence to establish the cause of suit alleged in the complaint, and upon which equitable jurisdiction was predicated. We held that it is necessary not only to allege a cause of suit in equity, *but also to establish it by proof on the trial,* before an equity court is permitted to award relief otherwise cognizable only at law.

■ In the instant case the situation is entirely different. Here plaintiff not only alleged a cause of suit in equity, *but on the trial clearly established the same by proof.* The evidence disclosed beyond all dispute that an oral agreement for the sale and purchase of two acres of land had been entered into; that, acting upon said oral

agreement, plaintiff actually took possession of the land and erected improvements thereon; that plaintiff paid a total of $425 upon the purchase price. Everything plaintiff did in the premises arose out of and was directly referable to the oral contract. His right to specific performance of the contract was fixed and complete long before defendants Mackey sold a part of the same land to the Oregon State Highway Commission. By his conduct, as shown by the evidence, defendant E. John Mackey acquiesced in the oral agreement and was estopped to take a position inconsistent with his acts. *Hayward v. Morrison et ux.,* 194 Or 335, 241 P2d 888; *Young v. Neill et al.,* 190 Or 161, 166. 220 P2d 89, 225 P2d 66; *Marshall v. Wilson,* 175 Or 506, 154 P2d 547; *Dunis v. Director et al.,* 121 Or 500, 507, 255 P 474; *Cantwell v. Barker,* 62 Or 12, 15, 124 P 264; *Barrett v. Schleich,* 37 Or 613, 617, 62 P 792; *Walter v. Hoffman,* 267 NY 365, 196 NE 291, 101 ALR 919, and note commencing at page 926; 37 CJS, Statute of Frauds, 753, § 247; Pomeroy, Specific Performance 3d ed, 283, § 247.

■ In *Stalker v. Stalker,* 78 Or 291, 298, 153 P 52, we said:

"The possession of real property, when taken pursuant to an oral contract for the sale thereof, is generally held to be such an act of part performance as to take the case out of the statute of frauds, even without any additional circumstance, such as the payment of the consideration, or the making of improvements [citing cases]."

■ It did not appear until the trial of the case that the defendant State Highway Commission was in truth an innocent purchaser for value, and was, therefore, entitled to a dismissal of the suit as to it. Nor until the trial did plaintiff discover the interest of the Highway

Commission in the land. This development rendered it impossible to decree specific performance of the entire contract, because defendants Mackey had put it beyond their power to fully perform. There could have been a partial performance decreed, with an abatement in the purchase price, had plaintiff been willing to accept such partial performance. *Bartholomew v. Bason*, 188 Or 550, 214 P2d 352; *Van Horn Construction Corp. v. Joy*, 186 Or 473, 207 P2d 157; 49 Am Jur, Specific Performance, 83, § 67. But plaintiff could not be compelled to accept partial performance.

Under the facts and circumstances of this case, partial performance would have raised other questions. State highway No. 101, as relocated, is a designated non-access highway, and had partial performance been decreed, plaintiff would have had no access thereto, nor any other means of ingress to and egress from his land except by the establishment of an easement of necessity across the remaining lands of defendant Ena Fay Mackey. In the light of the facts in this case, it is clear that partial performance would have been impracticable and unjust. In such circumstances the trial court was justified in retaining jurisdiction in equity and awarding plaintiff compensation in money, although the recovery of money is ordinarily obtainable only at law.

In 49 Am Jur, Specific Performance, 198, § 174, the following rule is stated:

> "Equity may, when its jurisdiction is invoked to obtain the specific performance of a contract, not only award damages in lieu of a decree of specific performance when the plaintiff has made out an equitable case for intervention but performance has become impossible or impracticable, but may, when decreeing specific performance, award damages or

pecuniary compensation to the plaintiff along with specific performance when the decree as awarded does not give complete and full relief. This is a further outgrowth of the right long exercised by equity courts of adjudicating all matters properly presented by and actually involved in the case at hand, when jurisdiction is once assumed on equitable grounds.''

See also 49 Am Jur, Specific Performance, 199, § 175; 30 CJS, Equity, 429, § 73.

The rule applicable to this case is well stated in *Oregon Growers' Co-op. Assn. v. Riddle,* 116 Or 562, 569, 241 P 1011. That was a suit for specific performance of a written contract for the sale of certain fruits. It appeared on the trial that specific performance might be rendered impossible by the sale of the fruits to others than the contract purchaser. The trial court decreed that if delivery was not made to the purchaser as provided in the contract, then he should recover from the seller liquidated damages in the amount named in the contract. At page 569 of 116th Or, this court said:

''When a court of equity has acquired jurisdiction over some portion of a controversy, it will proceed to decide the whole issue and award complete relief, though the rights of the parties are strictly legal and the final remedy is of a kind that may be granted by a court at law: Shultz v. Shively, 72 Or. 450 (143 Pac. 1115); Templeton v. Bockler, 73 Or. 494 (144 Pac. 405); O. W. R. & N. Co. v. Reed, 87 Or 398 (169 Pac. 342, 170 Pac. 300); Phez Co. v. Salem Fruit Union, 103 Or. 514, 545 (201 Pac. 222, 205 Pac. 970, 25 A.L.R. 1090). *There are circumstances under which a court of equity will grant compensation in money, ordinarily obtainable at law. One of these cases is where the plaintiff established his equity, but equitable relief is found impracticable:* 21 C.J. 143, § 123. The general rule as

to the test of jurisdiction of a court of equity is stated thus in 21 C.J., Page 145, Section 124(c):

> " 'Where Equity Fails After Suit Brought. The test of the jurisdiction of a court of equity is whether facts exist at the time of the commencement of the action sufficient to confer jurisdiction on the court. If plaintiff is then entitled to the aid of equity the jurisdiction will not be defeated by subsequent events which render equitable relief unnecessary or improper. This rule is applicable, not only where the relief sought is prevented by act of the defendant, but also where the change of circumstances arises from lapse of time, rendering the specific relief unsuitable or inequitable. * *'
>
> "Equitable rights must be both averred and proved before purely legal rights will be determined by a court of equity." (First italics ours.)

The trial court did not err in retaining equitable jurisdiction and awarding judgment against defendant Ena Fay Mackey.

The decree is affirmed. Plaintiff is entitled to costs.

### PETITION FOR REHEARING

*George P. Winslow,* of Tillamook, for the petition.

Before BRAND*, Chief Justice, and ROSSMAN, LUSK, LATOURETTE**, WARNER and TOOZE, Justices.

Petition denied.

TOOZE, J.

Defendant Ena Fay Mackey petitions for a rehearing.

Defendant in her petition alleges that this court

*Chief Justice when original decision was rendered.
**Chief Justice when this decision was rendered.

erred in its statement of the facts of the case and in reaching certain legal conclusions.

It is frankly conceded that in our opinion we did inadvertently misstate some of the facts and, therefore, welcome this opportunity to correct such error. Among other things, we said:

"It did not appear until the trial of the case that the defendant State Highway Commission was in truth an innocent purchaser for value, and was, therefore, entitled to a dismissal of the suit as to it. *Nor until the trial did plaintiff discover the interest of the Highway Commission in the land.* This development rendered it impossible to decree specific performance of the entire contract, because defendants had put it beyond their power to fully perform." (Italics ours.)

Defendant maintains that we erred in stating that it did not appear until the trial that the defendant Highway Commission was in truth an innocent purchaser for value. As shall later appear, we did not err in making that assertion.

We did err in stating that it was not until the trial that plaintiff discovered the interest of the Highway Commission in the land. Correspondence between the parties in late 1948 shows that plaintiff then knew that defendants had conveyed a right of way to the Highway Commission, which included a part of his two-acre tract. This also appears by the allegations of plaintiff's complaint.

In our opinion we also said:

"The last payment in the sum of $50, evidenced by a similar receipt, was made August 21, 1947, *or one week following the conveyance to the Highway Commission.*" (Italics added.)

The deed to the State Highway Commission was executed on August 14, 1948, as shown by the pleadings

and the evidence and as stated in our opinion. The receipt was issued August 21, 1947. Obviously the statement made by us is erroneous.

Defendant also asserts that we erred in stating that the conversation between E. John Mackey and plaintiff's carpenter in the fall of 1948 was "the first objection either defendant ever made to plaintiff's *possession and use* of the premises." (Italics added.) Considering the evidence as a whole, we did not err in that statement. In support of her claim, defendant invites attention to a more or less isolated portion of plaintiff's testimony on cross-examination. She overlooks other testimony of plaintiff, as well as some of her own testimony. Plaintiff testified positively that Mrs. Mackey had never notified him to quit building and to get off the premises, nor claimed that his dwelling was not being erected on the land he purchased, until she delivered to him the letter of her attorney, dated November 22, 1948, and quoted in our opinion.

It is true that before plaintiff commenced construction of his house in the late summer of 1948, there had been several discussions between the parties about the particular land that was being sold and purchased and about the inadvisibility of building the house until the survey promised by defendant had been made. In none of these discussions was objection made by defendant to the possession and use of the premises by plaintiff. The conversation related entirely to the exact boundary lines of the two-acre tract, which could be determined only by a survey. But long before that, plaintiff had taken possession and, without any objection by defendants, had erected a barn, constructed a fence for a corral, and had fenced the greater portion of the two acres claimed by him. Instead of objecting, defendant had actually furnished some of the material used

in the boundary fence construction. Furthermore, plaintiff had made substantial payments upon the agreed purchase price.

The acts of plaintiff last above mentioned were, in and of themselves, sufficient to entitle him to specific performance of the oral contract. The erection of the dwelling house was not necessary to perfect plaintiff's right to equitable relief. As we stated in our original opinion: "His right to specific performance of the contract was fixed and complete long before defendants Mackey sold a part of the same land to the Oregon State Highway Commission."

The exact boundary lines of the two-acre tract became a matter of dispute between the parties, as noted in our opinion, and this dispute was not finally settled until the court made its findings.

Defendant never attempted to repudiate the contract until November 22, 1948, though prior to that time she had offered to return to plaintiff the money he had paid on the purchase price, if he would quit the premises and remove his improvements therefrom, which offer he had refused.

Defendant's attempt to repudiate the contract, as evidenced by the letter of her attorney, dated November 22, 1948, led to a series of negotiations between the parties for an amicable adjustment of their differences. These negotiations extended over a long period of time, but finally proved fruitless. They consisted largely of correspondence. The last communication from plaintiff's attorney to defendant is dated November 2, 1950, and in which the following appears:

> "Bob Walker has been in again about his land deal with you, and he tells me that you have never gotten together on any settlement, and he is insisting now that the matter be closed.

"As you know from former letters, he wants a deed from you for the property (the two acres) which you agreed to sell to him and which he took possession of and improved.

"He is ready at any time and offers to pay you the balance agreed between you; but, of course, he wants a deed to the property.

"There is one condition which has come about and that is you have given a deed to the state highway commission for a road which takes off, as I understand, about 50 feet of the frontage of the two acres he was buying; and also, under your deed to the highway commission, no access to the highway is permitted to or from this property; and he expects this to be taken care of in some satisfactory way.

"The part in the highway is of more value than the property at the west end which gets into lower ground. So he is entitled to reduction in the price on that account and also to have some arrangement by which he can reach the road from his property.

"All of these things are matters which require adjustment, but Bob is ready to go ahead and fulfill his part of the agreement and asks that you do the same on your part.

"I am writing to the state highway commission in reference to the matter as well and know we will have something from it unless you get the matter fixed up with Bob in the meantime."

On November 24, 1950, defendant's attorney wrote to plaintiff, the first paragraph of that letter reading as follows:

"Ena Fay Mackey has instructed me to file a complaint in order to determine once and for all your arguments about purchasing from her a tract of land in the southeast quarter of the northeast quarter of Section 20, Township 2 South, Range 9 West, W. M., Tillamook County, Oregon."

This suit was commenced by plaintiff on December 11, 1950.

In our original opinion we did not discuss the pleadings in the case. As a prelude to the discussion to follow, a brief review of those pleadings seems necessary.

Plaintiff in his complaint alleged the making of the oral contract, his acts of part performance thereunder, his ability and willingness to fully perform on his part, and defendants' refusal to perform. He also alleged the facts regarding defendants' conveyance of a part of his two-acre tract to the Highway Commission and the use thereof by the Commission in the construction of the nonaccess highway. He charged that the Highway Commission had purchased from the defendants Mackey with knowledge and notice of his rights in the land. He also alleged the necessity of an easement of way over defendants' remaining lands for ingress to and egress from his property. He asserted that if he was denied access to the throughway, his damages would be not less than $250, recoverable from the defendants Mackey. He prayed for specific relief and for general equitable relief.

The sole defense of the defendants Mackey was that no contract had been entered into for the sale to plaintiff of the two acres. They affirmatively alleged that there had been some negotiations relating to such a sale, but claimed that before the negotiations had ripened into a contract, they had rescinded the whole transaction and tendered back to plaintiff the money he had paid them.

The defendant Highway Commission made a general appearance by answer. In brief, it affirmatively pleaded that it was a bona fide purchaser for value of all the land conveyed to it by the defendants Mackey,

including that portion claimed by plaintiff. It alleged specifically that a search of the records had been made, and that it had no notice or knowledge, actual or constructive, of plaintiff's interest in the land. It also asserted that the defendants Mackey had represented to it that they actually possessed said real property "and that no other person or persons whosoever had or claimed to have any right to the possession thereof; and that no other person or persons whosoever had or claimed to have any right, title or interest in or to said lands."

By his replies, plaintiff put in issue the affirmative allegations contained in the separate answers of the defendants.

██ Under the issues as formed by the pleadings the court was required to determine who owned the land in dispute, and in that connection the question whether the Highway Commission was an innocent purchaser for value was material. Although plaintiff knew long before he commenced suit that the land had been deeded to the Commission, he did not know until the trial that the said defendant had in truth purchased without knowledge of his interest in the property. True, the Highway Commission made the claim that it had purchased without notice of plaintiff's rights, but its mere claim did not establish the fact. Defendant seeks to make a point of the fact that the Commission offered no evidence on the trial to establish its good faith, but that is immaterial. The burden of proof was upon the plaintiff to establish his charges. After the evidence all had been presented and the court found that plaintiff had not sustained the burden of proof resting upon him, it properly dismissed the suit as to the Commission, thus denying plaintiff any relief from that defendant.

■ The evidence offered on the trial did present a real factual matter for decision respecting the innocence of the Commission. The testimony revealed that long before the negotiations between defendant and the Highway Commission for the sale and purchase of the land, plaintiff had taken possession of the two-acre tract and had made improvements thereon, as before noted. The improvements, consisting of the corral, boundary fence, and barn, were visible to anyone. However, there was nothing peculiar about these improvements that might indicate to anyone interested that they belonged to or were used by some person other than defendants. To all appearances, they constituted proper improvements for defendants' own farm operations. Under these circumstances, these improvements would not necessarily constitute notice to the defendant Commission that someone other than defendants had an interest in the land, and particularly so if, as alleged by the Highway Commission in its answer, the defendants represented that they were the sole owners of all the land being conveyed, and that no one else was interested therein. As witnesses on their own behalf, defendants did not deny making these representations. Construction of the dwelling house by plaintiff did not commence until shortly before the deed was executed, and at the time of the conveyance such work of construction had not progressed to any great extent. Moreover, for a considerable period of time prior to and during the negotiations between defendant and the Highway Commission, plaintiff lived at Nehalem, in Tillamook county, approximately 30 miles away from the land in dispute, and he was not upon the premises except occasionally. It also appears from the record that the negotiations between defendant and the Highway Commission occurred in May, 1948, although the

deed was not executed until August. At that time, of course, plaintiff was not upon the premises, nor was the dwelling house under construction.

There was no evidence tending to show that the Highway Commission observed any of the activities connected with the erection of the dwelling house on the land, nor of plaintiff's presence thereon in conjunction with such construction. Obviously there were no recorded documents to indicate plaintiff's interest in the property.

Plaintiff did not know of the negotiations between defendant and the Highway Commission and, of course, did not advise the Commission of his interest in the land prior to execution of the deed.

It was upon this record that the trial court found that the Highway Commission was an innocent purchaser for value. However, had the trial court found for plaintiff upon that issue, an entirely different situation would have presented itself.

Under the law as firmly established in this state, the vendee, under an executory contract of sale of land, is deemed to be the equitable owner of the property, and the vendor holds legal title to it in trust for the vendee as security for the unpaid balance. *Grider v. Turnbow,* 162 Or 662, 641, 94 P2d 285; *Miner v. Zweifel,* 118 Or 182, 245 P 729.

It is manifest, therefore, that if the Highway Commission, with knowledge, actual or constructive, of plaintiff's rights in the land, dealt with the defendants Mackey as it did, such dealings would have had no effect, except as hereafter stated, upon plaintiff's ownership of the property.

If, with such knowledge of plaintiff's interest in the land, the Highway Commission took possession

thereof for highway purposes, without paying plaintiff compensation therefor, plaintiff would have a right of action against the state of Oregon for the damages sustained. *Tomasek v. State Highway Com.*, 196 Or 120, 248 P2d 703. Regardless of who owned the land, the Highway Commission had the lawful right to take the property for highway purposes without first tendering compensation. Art. 1, § 18, Const. of Oregon. As to the right of the Highway Commission to take and use the land for a public use and to permanently deprive the owner of possession thereof, the question of its good faith in purchasing from defendants Mackey was wholly immaterial. But as to plaintiff's right to be compensated by the Commission, it was very material. However, in no event could the owner compel a return of the property, his sole remedy being that of damages.

Furthermore, the highway relocated and reconstructed upon a portion of plaintiff's land had been designated by the Highway Commission as a throughway, or nonaccess road. Plaintiff's tract constituted farm property. Under the law, had the Commission been compelled to deal with plaintiff, it was mandatory that it provide plaintiff some access to the highway as a condition of its right to take a part of his land for highway purposes. Chapter 226, § 14, Oregon Laws 1947, provides:

"Whenever a throughway is located, relocated, constructed or reconstructed through or over farm or agricultural property and thereby all reasonable ingress and egress have been destroyed, the commission shall provide access from such abutting property or properties to the throughway by a service road or by direct access, unless by agreement with the owner or owners of such abutting properties access to said throughway has been

waived by the property owner or had been acquired by the state, either by agreement or by the exercise of the power of eminent domain.''

The right of plaintiff as an owner to compensation for the land taken is a constitutional right. *Tomasek v. State Highway Com.,* supra. The right of access to the throughway has been given by statute, if it does not already exist under the constitution. However, we are not called upon to decide the constitutional question in this case and indicate no opinion thereon. These rights of plaintiff and the corresponding duties of the Highway Commission do not arise out of tort. They are in their very nature contractual.

Section 8-702, O.C.L.A., as amended by ch 3, Oregon Laws 1941, in part provides:

"A suit or action may be maintained against * * * the state of Oregon by and through and in the name of its state highway commission upon a contract * * * made by such commission * * * and within the scope of its authority, and not otherwise * * *."

When the Highway Commission takes land for a public use, in the absence of an express agreement on its part to pay compensation therefor, the law will imply such a promise. Also, when it takes farm land for the purpose of constructing a nonaccess highway, in the absence of an express contract providing access to such highway, the law will, by reason of the statute, if not by the constitution, imply such a contract.

Such implied contracts may be enforced against the Highway Commission pursuant to the provisions of § 8-702, OCLA, as amended, supra, as that statute applies to all contracts, whether express or implied. As to the enforcement of such contracts, the state has expressly waived its immunity to suit.

However, the enforcement of plaintiff's rights against the Highway Commission was dependent upon his ability to prove it was not an innocent purchaser for value. Had he prevailed upon that issue, the court could have ordered the Commission to provide him access to the throughway and, as a further incident to its equitable jurisdiction, awarded him compensation for the value of land taken.

In her brief, after directing attention to portions of the record wherein appears evidence establishing the fact that we erred in stating that plaintiff did not discover the Highway Commission's interest in the land until trial, defendant states:

"The above references to this record most conclusively shows [sic] the error of this court upon this *crucial and key* holding." (Italics ours.)

Her principal contention is based upon the theory that the erroneous finding of fact made by this court was necessary to its final decision. Defendant bases her argument upon a wrong premise.

As a matter of law, defendant contends that because plaintiff possessed such knowledge of the facts as heretofore outlined before he commenced his suit, he had no cause of suit, and the court was without jurisdiction to award a money judgment after denying specific performance. She cites as authority 1 Pomeroy, Equity Jurisprudence 5th ed, 436, § 237d; 438, § 237e; 442, § 237f.

Section 237d states the following rule:

"The doctrine that equity, having once become possessed of a cause, will retain it for the purpose of administering full and complete relief, does not apply when the facts relied on to sustain the equity jurisdiction fail of establishment."

We have no quarrel with that rule. It is but another way of saying that not only is it necessary "to allege a cause of suit in equity, but also to establish it by proof on the trial, before an equity court is permitted to award relief otherwise cognizable only at law", as we stated in our opinion.

Section 237e contains this statement:

"Where the aggrieved party shows that he is entitled to equitable relief, but the granting thereof appears to be impossible or impracticable, the court may proceed with the case, it seems, determine disputed issues, and adjust the rights and obligations of the parties, awarding damages in lieu of the desired equitable remedy."

This is substantially what we said in our opinion. Defendant seems to place her principal reliance upon what is said in § 237f, because she quotes all but the last paragraph thereof as follows:

"In suits for a specific performance the following rules have been established by American decisions: If through a failure of the vendor's title, or any other cause, *a specific performance is really impossible,* and the vendee is aware of the true condition of affairs before and at the time he brings his suit, the court, being of necessity obliged to refuse the remedy of specific performance, will not, in general, retain the suit and award compensatory damages, because, as has been said, the court never acquired a jurisdiction over the cause for any purpose. (Italics ours.)

"A second rule is, that if the remedy of specific performance is possible at the commencement of a suit by the vendee, and while the action is pending the vendor renders this remedy impracticable by conveying the subject-matter to a *bona fide* purchaser for value, the court will not compel the plaintiff to bring a second action at law, but, having ac-

quired jurisdiction, will do full justice by decreeing a recovery of damages.

"The third rule is as follows: If a specific performance was originally possible, but *before the commencement of the suit* the vendor *makes it impossible* by a conveyance to a third person; or if the disability existed at the very time of entering into the contract on account of a defect in the vendor's title, or other similar reason,—in either of these cases, if the vendee brings his suit in good faith, without a knowledge of the existing disability, supposing, and having reason to suppose, himself entitled to the equitable remedy of a specific performance, and the *impossibility* is first disclosed by the defendant's answer or in the course of the hearing, then, although the court cannot grant a specific performance, it will retain the cause, assess the plaintiff's damages, and decree a pecuniary judgment in place of the purely equitable relief originally demanded. This rule is settled by an overwhelming preponderance of American authorities." (Second and third italics ours.)

There is nothing in our original opinion that conflicts with these statements by Mr. Pomeroy. It will be noted as to the first rule announced that Mr. Pomeroy speaks of a situation where "a specific performance is *really impossible*" and the facts are known to the vendee before suit is commenced. It also will be observed that in speaking of the third rule Mr. Pomeroy comments on a situation where, "before the commencement of the suit" the vendor "makes it *impossible*" to perform by a conveyance to a third person. Neither of these rules is applicable to the facts in this case. Here specific performance *was not impossible*. The second rule stated comes nearest to the situation prevailing in the instant litigation, though it is not exactly applicable to our factual situation. (Italics ours.)

Defendant did not quote the last paragraph of § 237f, which states a further rule as follows:

"Another rule has been suggested, as follows: 'Even though the court should deny a specific performance of the contract in the exercise of that judicial discretion which it has in all cases asking that particular relief, yet, if the facts be such that the plaintiff might fairly and reasonably have expected the court to grant the equitable relief of specific performance, there would be such a show of equitable cognizance and doubtful remedy and probable cause as would save the plaintiff from the penalty of a dismissal of the bill for want of jurisdiction because of a plain, adequate and complete remedy at law.' "

Also see *Jones v. Gainer,* 157 Ala 218, 47 So 142, 131 Am St Rep 52; *Shipley v. Fink,* 102 Md 219, 62 A 360, 2 LR ANS 1002; *Goddard v. American Queen,* 27 Misc 482, 59 NYS 46; *McAllister v. Harman,* 101 Va 17, 42 SE 920.

Defendant also invites our attention to 4 Pomeroy, Equity Jurisprudence 5th ed, 1058, § 1410, which reads as follows:

"When the *impossibility* of a specific performance is disclosed at the hearing, and the suit was brought by the plaintiff in ignorance of such fact, the court will award the remedy of damages. If the vendor has disabled himself from performance after making the contract, and if the disability existed at the time of making the contract from a defect in his title, a court of equity will, in either of these cases, award damages to the vendee-plaintiff, provided he commenced his suit in good faith without any knowledge of the disability; but will not, in general, grant damages if the plaintiff was aware of the disablility at the time of bringing his suit." (Italics ours.)

■ Here Mr. Pomeroy again speaks of "impossibility". We agree that if a vendor, before suit is brought, renders it *impossible* to perform, and plaintiff brings his suit with knowledge of such disability, equity will not award damages in lieu of specific performance.

■ But, as we point out in our opinion, the conveyance to the Highway Commission simply prevented performance by defendants Mackey of the entire contract. At the time the suit was commenced, as well as upon the completion of the trial, a substantial performance was possible. *A right to specific performance had not only been alleged, but it also had been established by the proof.* That is the test of the jurisdiction of an equity court to award a money judgment. The court could have ordered defendants to perform so far as they were able, and awarded plaintiff an abatement in the purchase price. Apparently that would have met with plaintiff's approval.

In the final letter written by plaintiff's attorney before suit was commenced is the following significant statement:

"The part in the highway is of more value than the property at the west end which gets into lower ground. So he is entitled to reduction in the price on that account and also to have some arrangements made by which he can reach the road from his property."

In effect, this was an offer to accept partial performance with an abatement in the purchase price and a way of ingress to and egress from plaintiff's property. Upon the trial plaintiff was not directly asked anything with respect to partial performance under the conditions stated, but the foregoing letter was introduced into evidence as one of his exhibits. Plaintiff offered no testimony contradictory thereto. Defend-

ants did not offer partial performance. On the contrary, they denied the existence of the contract of sale and purchase in its entirety. That created the principal issue in the case, and upon which plaintiff prevailed.

Plaintiff's complaint shows that he did not seek a reconveyance from the Highway Commission; neither did he ask for a money judgment other than damages from defendants Mackey in the event he was prohibited access to the throughway. His complaint alleged all the material facts. Reading it as a whole, it is clear that plaintiff sought such performance at the hands of defendants Mackey as they were able to perform.

Defendant in her petition for rehearing contends that plaintiff's complaint fails to state facts sufficient to state a cause of suit for specific performance. After calling attention to the allegations regarding defendants' sale to the Highway Commission and the construction of the highway, defendant asserts:

"Under these allegations, respondent was not entitled to specific performance, without an allegation to the effect that plaintiff would accept partial performance."

In developing this theory, defendant goes on to say:

"The issue, made in the pleadings, that State Highway Commission was a purchaser with notice of respondent's rights was wholly immaterial. *The complaint affirmatively alleged facts which required a denial of specific performance against Highway Commission.* * * *.

"* * * * * *

"When respondent did not choose to take less than the whole and demanded the whole of his tract, respondent knew or should have known, that no equitable relief against the Highway Commission could be obtained and respondent's complaint and evidence were both insufficient." (Italics ours.)

Defendant proceeds upon an erroneous construction of the pleadings. Plaintiff did not seek specific performance at the hands of the Highway Commission. There is not a word in the complaint that supports such a theory. Specific performance was asked only from the defendants Mackey.

Although plaintiff did not in so many words allege that he would accept partial performance from defendants Mackey, nevertheless, considering the allegations of his complaint as a whole, they had that effect. His right to specific performance as against defendants Mackey was in no way dependent upon establishing his case against the Highway Commission. We are of the opinion that the complaint stated facts sufficient to have warranted a decree against the defendants Mackey for partial performance, and also that proof was adequate.

Of course, when plaintiff failed to establish his charges against the Highway Commission, the court was without power to enter any decree against that defendant, such, for example, as ordering it to provide plaintiff with access to the throughway. Defendants Mackey could not provide such access. Under all the facts and circumstances of this case, we cannot say that partial performance would have been practicable. It follows, therefore, that in lieu thereof, the award of a money judgment was just and proper.

Defendant states that the conclusions and decree of the trial court were based upon a theory different from that adopted by this court. This is immaterial. The important thing is that although the court's reasoning may have been wrong, its conclusions were correct.

Though the question is not raised by defendant's petition for rehearing, yet we wish to take this oppor-

tunity of noticing one other statement in our opinion. In speaking of partial performance, we said: "But plaintiff could not be compelled to accept partial performance." As applied to the facts in this case, that statement is dictum. It might be misunderstood and hence should be totally disregarded. That question is not before us, and we do not wish to be understood as expressing any opinion thereon.

The petition for rehearing is denied.